UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GEORGE K. HENAGAN, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LAFAYETTE, MAYOR-PRESIDENT JOSH GUILLORY, CITY-PARISH ATTORNEY GREGORY J. LOGAN, LAFAYETTE POLICE DEPARTMENT, CHIEF MONTE POTIER, Lt. SCOTT MORGAN, and OFFICER JOSHUA MYERS, <br><br> Defendants. | Case No. 6:21-cv-3946 |

## COMPLAINT

Plaintiff George K. Henagan, by and through his undersigned attorneys, for his complaint against Defendants the City of Lafayette, Mayor Josh Guillory, City-Parish Attorney Gregory J. Logan, the Lafayette Police Department, Chief Monte Potier, Lt. Scott Morgan, and Officer Joshua Myers, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff George Henagan is homeless and unemployed. He is supported in part by donations from the public. While exercising his protected speech to ask for donations, Mr. Henagan has twice been cited for misdemeanor offenses by the officers of the Lafayette Police Department ("LPD"). He seeks to remedy the past criminalization and prevent future criminalization of his exercise of protected speech arising from the City of Lafayette's unconstitutional enforcement of municipal ordinances 62-71, 62-32, and 62-68 and state law La.

R.S. § 14:97.

2. Lafayette City-Parish Consolidated Government Code of Ordinances ("Code") § 62-71, "Begging and soliciting money," discriminates based on the content of speech. The ordinance and its enforcement amount to a regulation of speech that is impermissible under the First Amendment to the U.S. Constitution, as well as Article I, Section 7 of the Louisiana Constitution.

3. Code § 62-71 specifically prohibits individuals from soliciting money or anything of value under various circumstances including doing so "in an aggressive manner," soliciting "any operator of a motor vehicle that is in traffic on a public street," or soliciting within 50 feet of either an ATM or the entranceway of a building that contains an ATM.

4. Nonprofits and other charitable organizations who ask for money for those in need are exempted from the ordinance; individuals who directly ask for money are targeted by it. In this way, the ordinance favors speech made for certain collections over others. Under this ordinance, certain topics of speech are restricted for certain speakers on the streets of Lafayette. On its face, this ordinance regulates the message and content of speech. It should therefore be subject to strict scrutiny.

5. Mr. Henagan further seeks to enjoin the unlawful enforcement of Lafayette's Criminal Mischief ordinance, Code § 62-32, which prohibits, "[a]cting in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others." The application of this ordinance to criminalize Mr. Henagan's speech would violate the First and Fourth Amendments to the U.S. Constitution and Article I, Section 7 of the Louisiana Constitution. The ordinance is both unconstitutionally vague and overbroad.

6. Finally, Mr. Henagan seeks to enjoin Defendants' unlawful enforcement of the

"Simple obstruction of a highway of commerce" ordinance, Code § 62-68, and companion state statute La. R.S. § 14:97, which Defendants have applied to criminalize protected speech. The future application of these laws to criminalize Mr. Henagan's speech would violate the First and Fourth Amendments to the U.S. Constitution and Article I, Section 7 of the Louisiana Constitution.

7. This action arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Mr. Henagan also brings supplemental claims for protection of free speech guaranteed by Louisiana State Constitution Article I, Section 7.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

10. Plaintiff George K. Henagan is a homeless resident of Lafayette. Defendants seized and cited him twice under Code § 62-71, first on November 12, 2020, and again on November 28, 2020.

11. Defendant City of Lafayette is a Louisiana municipality.

12. Defendant Josh Guillory is the Mayor-President of Lafayette. He is responsible for appointing the Chief of the LPD and for overseeing the Department. In his term, Guillory has presided over the unconstitutional enforcement of ordinances and statutes, as detailed in this complaint. Mr. Henagan sues Defendant Guillory in his official and individual capacities.

13. Defendant Gregory J. Logan is the City-Parish Attorney for the consolidated government of Lafayette City and Parish. Apart from advising the Mayor and the Lafayette Consolidated Government Council, Logan oversees the office of City Prosecutor, which

prosecutes violations of municipal ordinances and state misdemeanors in the City Court of Lafayette. Mr. Henagan sues Defendant Logan in his official and individual capacities.

14. Defendant Lafayette Police Department is a subdivision of the City of Lafayette under the direction and supervision of Defendant Guillory. LPD maintains policies and procedures that result in unconstitutional enforcement of municipal ordinances and state statutes to target protected speech.

15. Defendant Monte Potier is the current Chief of the LPD. Potier oversees enforcement of Defendants' campaign to criminalize begging and panhandling within the City of Lafayette. Mr. Henagan sues Chief Potier is his official capacity only.

16. Defendant Scott Morgan, a lieutenant in the LPD, served as interim Police Chief at the time that LPD officers under his command cited Mr. Henagan in retaliation for his speech. Mr. Henagan sues Defendant Morgan in his individual capacity only.

17. Defendant Officer Joshua Myers carried out an unconstitutional deprivation of Mr. Henagan's rights through enforcement of Code § 62-71 "Begging and Soliciting Money" via seizure, search, and citation of Mr. Henagan on Nov. 12, 2020. This unlawful arrest violated the First and Fourth Amendments. Defendant Myers is sued in his official and individual capacities.

## FACTUAL BACKGROUND

18. The City of Lafayette is the parish seat and most populous city of Lafayette Parish.

19. Over 15% of Lafayette Parish's population lives below the poverty line.

20. As part of the Department of Housing and Urban Development's annual Point-in-Time survey, the Lafayette/Acadiana continuum of care estimated a total homeless population of 417 people on Jan. 27, 2020.

21. Since the onset of the COVID-19 pandemic, Acadiana Regional Coalition on Homelessness & Housing ("ARCH") estimates the homeless population has risen dramatically, nearly doubling in Acadiana between March 2020 and October 2020.[1]

22. Some homeless residents of Lafayette, like Mr. Henagan, rely on asking for donations to support themselves.

23. Defendants Guillory and LPD have undertaken a campaign to eliminate begging and panhandling within the city.

24. In August 2020, Defendant Guillory proposed Ordinance No. JO-079-2020, which would have criminalized "sit[ting] or stand[ing] for any period of time (i) in or within 36 inches of any roadway, (ii) in or on any unpaved median, (iii) or in or on any median of less than 36 inches."[2] When called to testify about the origin of the proposed ordinance, City-Parish Attorney Logan first stated that the ordinance was meant to "deal with the congregating of people right up against the street" and that "[b]ased on our research, it's the only one that has held up as constitutional, trying to address the issues that we have."[3] In response to a councilmember's question of whether the ordinance had been spurred by complaints and calls from constituents, Defendant Guillory said, "Call? They call and shake me down when I'm in public—but no, absolutely. Just drive around town and you can see."[4] When another council member questioned, "So, who are we targeting, panhandlers?", the Defendant Logan stated, "Panhandlers, people in traffic . . . ." The councilmember asked, "Why can't we identify that, is

---

[1] Ken Stickney, *Acadiana's homeless population nearly doubles as COVID-19 closes shelters, jobs plummet: survey*, The Acadiana Advocate, *available at* https://www.theadvocate.com/acadiana/news/coronavirus/article_bdabcfcc-18c7-11eb-9575-8bdee587e69f.html.

[2] Ordinance No. JO-079-2020.

[3] Lafayette Consolidated Government Council Meeting, August 18, 2020, https://video.ibm.com/recorded/127626692 at 50:00–51:10.

[4] *Id.* at 52:10–:20.

5

that too general?" Defendant Logan responded, "Unfortunately, the United States Supreme Court has said that panhandling is ok. So, if you say 'panhandlers,' it will be declared unconstitutional."[5]

25. At a Council meeting the following month, one speaker, Ryan Harris, succinctly stated, "Any ordinance that you write that has the purpose of stopping a person from asking for money on the side of the road will be unconstitutional—no matter how you word it. Because standing on the side of the road and asking for money is protected by the First Amendment."[6] The Council deferred the ordinance indefinitely.[7]

26. Following the proposed ordinance's failure, Defendant Guillory instructed LPD to use existing ordinances and statutes to criminalize panhandling in Lafayette.

27. Officers of the LPD compiled a list of names for targeted enforcement of existing ordinances against people known to beg or solicit donations in Lafayette's public spaces.

28. In an affidavit of probable cause supporting a Lafayette man's arrest under the criminal mischief ordinance, Code § 62-32, LPD officer D. Broussard attested that LPD keeps a list of individuals for targeted enforcement for panhandling:

> On March 29, 2021 at 0948 hours I, Sr. Cpl. D. Broussard, observed a black male standing in the median, holding a sign, on the 100 block of W. Willow. I approached the defendant, Anthony Willis. I am familiar with the defendant's name due to compiling a list of name of subjects panhandling (holding signs asking for help; money, food or anything helpful.) for the past 4 months. Anthony Willis as been cited 6 times since January 1, 2021. (1/6/21, 2/8/21, 2/18/21, 2/22/21, 3/22/21 and 3/23/21) Defendant was placed under arrest and transported to LPCC for booking.

---

[5] *Id.* at 58:12.

[6] Lafayette Consolidated Government Council Meeting, September 15, 2020, *available at* https://video.ibm.com/recorded/127894696 at 1:17:09.

[7] Andrew Capps, *Lafayette councils pass $400k rent assistance plan, dump anti-panhandling measure*, The Daily Advertiser, available at https://www.theadvertiser.com/story/news/local/2020/09/16/louisiana-coronvirus-pandemeic-covid-19-lafayette-rent-assistance-plan/5751574002/.

29. LPD issues citations to those listed individuals under the panhandling ordinance, Code § 62-71; the criminal mischief ordinance, Code § 62-32; and the "simple obstruction of a highway of commerce" ordinance and statute, Code § 62-68 and La. R.S. § 14:97.

30. Between April 2019 and April 2021, LPD officers made 61 arrests under the panhandling ordinance and 52 arrests under the criminal mischief ordinance.[8]

31. Local media reports that between December 2020 and June 2021, LPD cited 105 people for violations of the panhandling and criminal mischief ordinances. Among that number, 53 people were cited more than once. Some had been cited as many as five times.[9]

32. LPD also cites panhandlers under Code § 62-68 and its state law counterpart, La. R.S. § 14:97, "Simple Obstruction of a Highway of Commerce."

33. In 2021, Defendants installed 40 signs throughout Lafayette instructing the public not to give to panhandlers. The text of the signs read, "Panhandling is not safe. Change the way you give. Call 211 to help."

34. On July 27, 2021, then-Chief Thomas Glover issued an internal LPD memo to all personnel with subject line "Panhandling." The memo, which was leaked to multiple media outlets, stated:

> Effective immediately, all uniformed Lafayette Police Officers, regardless of rank, shall enforce laws that restrict panhandling within the city limits of Lafayette. This includes patrol, patrol support, traffic, TNT, and the Specialized Panhandling Detail. Specific officers enroute to other calls will contact the Watch Office with information regarding the panhandling. The Watch Commander's Office will be responsible for assuring proper response to the panhandler. Violations of this directive shall result in progressive discipline.[10]

---

[8] These numbers were produced in response to a public records request submitted by the Plaintiff's counsel to the LPD.

[9] Leslie Turk and Christiaan Mader, *Aggressive policing has Lafayette panhandlers caught in a cycle of jail and homelessness*, The Current, *available at* https://thecurrentla.com/2021/aggressive-policing-has-lafayette-panhandlers-caught-in-a-cycle-of-jail-and-homelessness/.

[10] *LPD Chief releases statement after violent weekend, report of memo on panhandling enforcement*, KATC 3, July 27, 2021, available at https://www.katc.com/news/lafayette-parish/lpd-all-officers-will-enforce-panhandling-laws-

### A. The Laws Lafayette Uses to Criminalize Protected Speech

35.     Code § 62-71 prohibits soliciting money or anything of value under various circumstances including doing so "in an aggressive manner," soliciting "any operator of a motor vehicle that is in traffic on a public street," or soliciting within 50 feet of either an ATM or the entranceway of a building that contains an ATM. The ordinance further defines solicitation to include "the spoken, written, or printed word or such other acts or bodily gestures as are conducted in furtherance of the purposes of obtaining charitable or gratuitous donations, contributions or alms."

36.     Code § 62-71 exempts from these prohibitions "a professional firefighters association or other nonprofit organization who solicits contributions, as a member of such association, on behalf of bona fide charitable organizations." By incorporation of Code § 70-61, the ordinance also exempts "peddler[s], solicitor[s], and/or door-to-door vendors" who offer goods, merchandise, or services for sale or rental.[11]

37.     Code § 62-32 criminalizes various behaviors, among them "[a]cting in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others" and "[c]ongregating with others on a public street and refusing to move on when ordered by the police."

38.     Code § 62-68 and its state-law analogue, La. R.S. § 14:97, criminalize "obstruction of a highway of commerce" by the "intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway,

---

or-face-discipline; *see also* Claire Taylor, *Lafayette Police ordered to enforce panhandling laws or face discipline*, The Advocate, July 27, 2021, available at https://www.theadvocate.com/acadiana/news/crime_police/article_2a6f4688-ef38-11eb-9af4-57b9833cd0e6.html

[11] Code § 62-71(d)(1)–(2).

8

thoroughfare, or runway of an airport, which will render movement thereon more difficult."

### B. Criminalization of Mr. Henagan's Protected Speech

39. George K. Henagan is a resident of Lafayette. He has been homeless for about three years. He supports himself by asking the public for donations. He intends to engage in this practice in the future, absent a change in his financial circumstances.

40. Prior to Defendant Guillory taking office, LPD officers would not bother to cite or arrest Mr. Henagan for panhandling. Instead they would allow him to continue asking for donations, or at most would simply ask him to move along.

41. On the morning of November 12, 2020, LPD officers, including Defendant Myers, stopped Mr. Henagan near the intersection of West Congress Street and West University Avenue. Mr. Henagan had been asking for donations from the sidewalk. Officers detained Mr. Henagan for 15 minutes, frisked him, and wrote him a misdemeanor citation. Before leaving, Defendant Myers threatened Mr. Henagan from soliciting on the block again, saying, "If we catch you again, it's not going to be nice." The citation listed his offense as "Begging and soliciting money 62-71(b)(6)." The explanation field of the citation reads "attempting to obtain money from cars in roadway with a sign."

42. The case was filed in the City Court of Lafayette, where the City Prosecutor amended the charge to Simple Obstruction of a Highway, La. R.S. § 14:97, before dismissing the case in April 2021.

43. On the morning of November 28, 2020, LPD officers again detained Mr. Henagan while he was soliciting donations from a sidewalk in front of 100 S. College Road in Lafayette. The officers frisked Mr. Henagan and cited him for a misdemeanor offense of "Soliciting /

Begging" under Code "62-79 [*sic*]."[12] The explanation of Mr. Henagan's alleged offense reads "Holding sign soliciting alms."

44. This case was also filed in the City Court of Lafayette, where the City Prosecutor again amended the charge to "Simple obstruction of a highway." Mr. Henagan pleaded no contest. The court sentenced Mr. Henagan to 30 days in Lafayette Parish Correctional Center on May 4, 2021.

## CLAIMS FOR RELIEF

### COUNT ONE

### 42 U.S.C. § 1983 Challenge to Lafayette Code § 62-71 "Begging and Soliciting Money"

45. Code § 62-71 is, on its face, a content-based restriction of free speech in violation of the First Amendment. The law criminalizes public speech requesting charitable donations by an individual.

46. Furthermore, the text of the ordinance discriminates among speakers and viewpoints, exempting from its prohibitions firefighters and those working on behalf of "bona fide charitable organizations."

47. The ordinance is neither narrowly tailored nor is it necessary to achieve a compelling government purpose.

48. In the alternative, were Code § 62-71 found to be content-neutral, the ordinance is a restriction on the place and manner of speech that neither serves a significant governmental interest nor leaves ample alternative channels for communication.

49. Mr. Henagan's charge under this ordinance on Nov. 12, 2020 was unlawful.

---

[12] This appears to have been a misprint by the citing officer, as Code § 62-79 criminalizes simple damage to property.

Defendants violated his First, Fourth, and Fourteenth Amendment rights under the U.S. Constitution. Defendants' conduct, including Mr. Henagan's later citation on Nov. 28, 2020, presents a real and immediate threat of future unlawful enforcement of this ordinance against Mr. Henagan.

## COUNT TWO

### 42 U.S.C. § 1983 Challenge to Lafayette Code § 62-32
### "Criminal Mischief"

50. The "Criminal Mischief" ordinance, Code § 62-32, is so vague as to violate due process. The ordinance's prohibition on "acting in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others," lacks requisite specificity to place the public on notice of what conduct is prohibited. Furthermore, the vague nature of the statute encourages discriminatory and arbitrary enforcement.

51. In addition, the ordinance is overbroad. Its language prohibits a substantial amount of constitutionally protected speech, so long as some member of the public might find that speech annoying, offensive, or disturbing.

52. Defendants' use of Lafayette's "Criminal Mischief" ordinance to criminalize begging and panhandling presents a real and imminent threat to Mr. Henagan.

## COUNT THREE

### 42 U.S.C. § 1983 Challenge to Lafayette Code § 62-68
### "Simple Obstruction of a Highway of Commerce"

53. As applied by Defendants to Mr. Henagan's act of requesting donations, Code § 62-68 would violate Mr. Henagan's First Amendment rights.

54. Defendants have used this ordinance to deny Mr. Henagan's and others' rights to engage in protected speech, amounting to an unreasonable restriction on time, manner, and place

of speech.

55. Mr. Henagan suffers from a threat of imminent harm by Defendants' likely enforcement of this ordinance to silence his protected speech in the future.

## COUNT FOUR

### 42 U.S.C. § 1983 Challenge to La. R.S. § 14:97

56. As applied by Defendants to Mr. Henagan's act of requesting donations, La. R.S. § 14:97 would violate Mr. Henagan's First Amendment rights.

57. Defendants have used the statute to deny Mr. Henagan's and others' right to engage in protected speech, amounting to an unreasonable restriction on time, manner, and place of Mr. Henagan's speech.

58. Mr. Henagan suffers from a threat of imminent harm by Defendants' likely enforcement of this statute to silence his protected speech in the future.

## COUNT FIVE

### 42 U.S.C. § 1983 Fourth Amendment Retaliatory Arrest

59. Mr. Henagan was subjected to an unlawful search and seizure.

60. While interacting with Defendant Myers and the officers as they searched and seized him, Mr. Henagan did not consent and was not realistically free to leave the presence of the officers.

61. Defendant Myers and other LPD Officers did not have a warrant or reason to suspect Mr. Henagan was committing a crime. Instead, their acts were retaliation for Mr. Henagan's protected speech.

62. In the alternative, Defendant Myers and other LPD officers may have had probable cause to seize, search, and cite Mr. Henagan, but they did not seize, search, or cite

people who were otherwise similarly situated and did not ask the public for donations.

63. This amounts to an unlawful, retaliatory arrest that violates the Fourth Amendment, as incorporated by the Fourteenth Amendment.

## COUNT SIX

### State Law Challenge to the Restriction of Speech

64. Mr. Henagan incorporates by reference the allegations in Counts One through Four.

65. Louisiana Constitution Article I, Section 7 protects freedom of speech: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

66. Defendants' criminalization of Mr. Henagan's speech on Nov. 12, 2020, under Code § 62-71, and the threat of future criminalization of his speech under Code §§ 62-32 and 62-68, violate Mr. Hengan's rights under Louisiana State Constitution Article I, Section 7.

### REQUEST FOR RELIEF

Plaintiff requests that this Court:

A. Declare that Lafayette Code § 62-71, "Begging and Soliciting Money" is unconstitutional as a content-based regulation on free speech that does not pass strict scrutiny.

B. Declare that Lafayette Code § 62-32 "Criminal Mischief" is unconstitutional for vagueness and overbreadth.

C. Enter an order enjoining future enforcement of Code §§ 62-71 and 62-32.

D. Declare that the enforcement of the panhandling ordinance, Code § 62-71, against Mr. Henagan constituted an unlawful seizure that violated the Fourth Amendment.

E. Declare that application of La. R.S. § 14:97 or Code § 62-68 to criminalize begging or panhandling is unconstitutional.

F. Enter an order enjoining Defendants from the enforcement of La. R.S. § 14:97 and Code § 62-68 against Mr. Henagan for exercising protected speech.

G. Award damages to Mr. Henagan for the rights violated by the Nov. 12, 2020, seizure and citation.

H. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

I. Order all other relief this Court deems just and proper.

Respectfully submitted,

/s Eric A. Foley
Eric A. Foley, La. Bar No. 34199, T.A.
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
eric.foley@macarthurjustice.org


/s/ Alysson Mills
Alysson L. Mills, La. Bar No. 32904
Kristen D. Amond, La. Bar No. 37011
Mills & Amond LLP
650 Poydras Street, Suite 1525
New Orleans, Louisiana  70130
Telephone:  (504) 383-0332
Facsimile: (504) 383-0332
amills@millsamond.com
kamond@millsamond.com