UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GEORGE K. HENAGAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAFAYETTE, et al.,<br><br>Defendants. | Case No. 6:21-cv-3946-RRS-PJH |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
FILED BY MONTE POTIER, SCOTT MORGAN, AND JOSHUA MYERS**

### CONTENTS

INTRODUCTION ........................................................................................................................ 3

FACTS ......................................................................................................................................... 4

ARGUMENT ............................................................................................................................... 6

CONCLUSION........................................................................................................................... 16

*Cases*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)......................................................................... 7, 8

*Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)............................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .............................................................. 7

*Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 664 (E.D. La. 2017).......................................... 13

*Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Colo. 2015)............................. 14

*Cain v. City of New Orleans*, No. 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017)............ 9

*Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) ..................................................... 11

*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)...................................................................7

*Daves v. Dallas Cnty., Tex.*, 22 F.4th 522 (5th Cir. 2022).................................................................9

*Dixon v. Youngblood*, No. CV 20-743, 2021 WL 765380 (E.D. La. Feb. 26, 2021).......................3

*Homeless Helping Homeless, Inc. v. City of Tampa, Fla.*, No. 8:15-cv-1219, 2016 WL 4162882 (M.D. Fla. Aug. 5, 2016)...................................................................................................14

*Johnson v. Bowe*, 856 F. App'x 487, 490–91 (5th Cir. 2021) .........................................................11

*Massachusetts Coal. for the Homeless v. City of Fall River*, 486 Mass. 437, 158 N.E.3d 856 (2020).........................14

*McCraw v. City of Oklahoma City*, 973 F.3d 1057 (10th Cir. 2020).............................................14

*McMillian v. Monroe County*, 520 U.S. 781, 783 (1997)................................................................9

*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)................................................................7

*Morgan v. Swanson*, 659 F.3d 359, 371–71 (5th Cir. 2011)..........................................................12

*Northern Ins. Co. of New York v. Chatham County, Ga.*, 5447 U.S. 189, 193–95 (2006) ...........10

*Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015).........................................................14

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .............................................................................13

*Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) .................................................................14

*Thayer v. City of Worcester*, 144 F. Supp.3d 218 (D. Mass. 2015)..............................................13

*Thayer v. City of Worcester*, 576 U.S. 1048 (2015) .....................................................................13

*Vill. Of Shaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980)...............................13

*Villarreal v. City of Loredo, Texas*, 17 F.4th 532 538 (5th Cir. 2021) ...........................11, 12, 15

*White v. U.S. Corr., L.L.C.*, 996 F.3d 302 (5th Cir. 2021).............................................................7

*Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)................................................7

**Statutes**

28 U.S.C. § 2403(b).......................................................................................................................10

Code § 62-71........................................................................................................................passim

La. R.S. § 49:257(C).....................................................................................................................10

**Rules**

Fed. R. Civ. P. 15(a)(1) ...................................................................................................................4

Plaintiff George K. Henagan respectfully opposes the motion to dismiss filed by Defendants Monte Potier, Scott Morgan, and Joshua Myers. [Doc. 19].[1]

## INTRODUCTION

Plaintiff George K. Henagan filed a complaint against, among others, Lafayette Police Department Chief Monte Potier, LPD lieutenant and once-LPD Chief Scott Morgan, and LPD officer Joshua Myers for their roles in enforcing Lafayette City-Parish Consolidated Government Code of Ordinances §§ 62-32, 62-68, and 62-71, and La. R.S. § 14:97 to criminalize Mr. Henagan's requests for charitable donations. [Doc. 1]. Plaintiff's original complaint sued Defendant Potier in his official capacity only, Defendant Morgan in his individual capacity only, and Defendant Myers in both his official and individual capacities.

Defendants Potier, Morgan, and Myers move to dismiss Plaintiff's complaint, setting forth four arguments: (1) Plaintiff's claims against Defendants Potier and Myers in their official capacity are redundant; (2) Plaintiff's complaint is not sufficiently particular; (3) Defendants "are improper parties to dispute/challenge the constitutionality of state laws"; and (4) Defendants Morgan and Myers are entitled to qualified immunity.

Since Defendants filed their motion to dismiss, Plaintiff amended his complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1). [Doc. 29]. Plaintiff's amendment moots many of the arguments raised in Defendants' motion, leaving the Court to consider primarily only whether

---

[1] After Defendants filed their motion to dismiss, Plaintiff amended his complaint. [Doc. 29]. The amended complaint likely moots pending motions to dismiss, but Plaintiff submits this opposition to the instant motion in an abundance of caution. *See Dixon v. Youngblood*, No. CV 20-743, 2021 WL 765380, at *1 (E.D. La. Feb. 26, 2021) (quoting 1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary Rule 15*) ("Many district courts—including this Court—routinely deny as moot any motion to dismiss that is filed prior to an amendment of a complaint. Although courts may address the merits of a motion to dismiss after an amended complaint is filed, as a general rule, "if applying the pending motion to the amended complaint would cause confusion or detract from the efficient resolution of the issues, then it makes sense to require the defendant to file a new motion specifically addressing the amended complaint.").

3

qualified immunity shields Defendants Morgan and Myers from liability for the three counts in which Plaintiff seeks monetary relief. For the reasons discussed, it is clearly established that panhandling laws like the ones Defendants enforced violate the First Amendment, and the doctrine of qualified immunity does not permit government officials to invoke patently unconstitutional statutes to avoid liability for their actions.

## FACTS

*Lafayette's targeted criminalization of panhandling*

The City of Lafayette has undertaken a campaign since January 2020 to criminalize begging and panhandling around the city. In August 2020, Lafayette Mayor-President Josh Guillory proposed an ordinance that would create a new crime for those who "sit or stand for any period of time (i) in or within 36 inches of any roadway; (ii) in or on any unpaved median; or (iii) in or on any median of less than 36 inches."[2] The Lafayette Consolidated Government Council the Council deferred the ordinance indefinitely after being told that any ordinance preventing a person from standing on the side of the road and asking for money was a violative of the First Amendment.[3]

Following the proposed ordinance's failure, Defendant Morgan, as interim Chief of LPD, instructed LPD officers, including Defendant Myers, to use existing ordinances and statutes to criminalize panhandling in Lafayette.[4] Defendant Morgan, with others, created a list of homeless individuals for targeted enforcement.[5]

---

[2] Ordinance No. JO-079-2020.

[3] Amended Complaint at ¶¶ 23–24.

[4] Amended Complaint at ¶ 25.

[5] Amended Complaint at ¶¶ 28–30.

4

LPD officers issue citations to the listed individuals under the following: (1) Code § 62-71, "Begging and Soliciting Money," which prohibits soliciting money or anything of value under various circumstances including doing so "in an aggressive manner," soliciting "any operator of a motor vehicle that is in traffic on a public street," or soliciting within 50 feet of either an ATM or the entranceway of a building that contains an ATM[6]; (2) Code § 62-32, "Criminal Mischief," which criminalizes ten categories of conduct ranging from throwing stones into the street to giving a false alarm of fire; and (3) Code § 62-68 (and the identical La. R.S. § 14:97), "Simple Obstruction of a Highway of Commerce," which prohibits "the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, street or runway of an airport, which will render movement thereon more difficult."

LPD, at the direction of Mayor Guillory, enacted policies requiring "all uniformed Lafayette Police Officers, regardless of rank" to "enforce laws that restrict panhandling" under threat of "progressive discipline" if they did not comply.[7] On information and belief, Mayor Guillory even directed LPD to create a "special panhandling detail" consisting of LPD officers working 12-hour shifts devoted to the citation and arrest of panhandlers.[8] Officers were directed to detail their daily citation and arrests under Code §§ 62-71, 62-32, and 62-68 in a "Panhandling Detail Activity Sheet."[9]

*Criminalization of Plaintiff's protected speech*

---

[6] The law broadly defines "soliciting money" to include verbal and nonverbal speech: "without limitation, the . . . written, or printed word or such other acts or bodily gestures as are conducted in furtherance of the purposes of obtaining charitable or gratuitous donations, contributions or alms." Code § 62-71(a). The ordinance exempts "a professional firefighters association or other nonprofit organization who solicits contributions, as a member of such association, on behalf of bona fide charitable organizations." Code § 62-71(d)(1).

[7] Amended Complaint at ¶ 38.

[8] Amended Complaint at ¶ 39.

[9] Amended Complaint at ¶ 40.

5

Plaintiff, a homeless Lafayette resident, supports himself by asking the public for donations.[10] Plaintiff has been twice cited and detained for begging on Lafayette's sidewalks.[11] On November 12, 2020, Plaintiff was standing on the sidewalk at the intersection of West Congress Street and West University Avenue. Defendant Myers detained Plaintiff, frisked him, searched his bag, and cited for a violation of Code § 62-71 ("Begging and Soliciting Money"). Defendant Myers threatened Plaintiff from soliciting on the block again, saying "If we catch you again, it's not going to be nice."[12]

Two weeks later, Plaintiff was on the sidewalk at the intersection of South College Road and Johnson Street when another LPD stopped him, frisked him, and cited him for "holding sign soliciting alms."[13] Both cases were filed in the City Court of Lafayette, where the city prosecutor amended both charges to Simple Obstruction of a Highway under La. R.S. § 14:97.[14]

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true 'raise a right to relief above the speculative level.'" *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wright v.*

---

[10] Amended Complaint at ¶ 46.

[11] Amended Complaint at ¶¶ 48–51.

[12] Amended Complaint at ¶ 48.

[13] Amended Complaint at ¶ 50.

[14] Amended Complaint at ¶¶ 48–51.

*Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

>  1. **"The claims against Interim Chief Potier and Officer Myers in the official capacities are redundant as a matter of law."**

Defendants Potier and Myers argue that Plaintiff's claims against them in their official capacities are redundant of the Plaintiff's claims against the City of Lafayette. [Doc. 19-1 at 9]. Out of an abundance of caution, Plaintiff sued Defendants Potier and Myers in their official capacities not only for the purposes of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), but also under the alternative theory of liability under *Ex Parte Young*, 209 U.S. 123 (1908), to enjoin enforcement of La. R.S. § 14:97.[15]

For the sake of efficiency, however, Plaintiff's amended complaint does not include claims against Defendant Myers in his official capacity or against Defendant Potier at all. Defendants' motion on this basis is therefore moot.

>  2. **"Plaintiff's group pleading fails to meet particularity standards."**

Defendants argue Plaintiff's complaint should be dismissed because they are unable to "discern which defendant did what" in the Plaintiff's complaint. [Doc. 19-1 at 10].

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[15] In *Ex parte Young*, the Supreme Court created a limited exception to sovereign immunity under which "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). Indeed, Defendants seem to argue in their motion that they are state actors when enforcing La. R.S. § 14:97. Plaintiff addresses this argument in section 3, *infra*.

7

Plaintiff's original complaint was reasonably clear as to what allegations were made against what defendant, but the amended complaint removes all doubt. The amended complaint specifically alleges, among other things, that Defendant Morgan "instructed LPD to use existing municipal ordinances—including Code § 62-721—to criminalize panhandling in Lafayette"[16]; "compiled a list of names of targeted enforcement" of those ordinances[17]; and enacted policies to criminalize requests for donations, which caused Plaintiff's arrests and citations[18]; and violated Plaintiff's First, Fourth, and Fourteenth Amendment rights by enacting policies that criminalized Plaintiff's protected speech.[19]

The amended complaint alleges Defendant Myers detained, frisked, and cited Plaintiff for asking for donations on the sidewalk[20]; threatened Plaintiff's future soliciting donations[21]; violated Plaintiff's First, Fourth, and Fourteenth Amendment rights by charging Plaintiff under an ordinance that Defendant Myers knew or should have known was unlawful[22]; and searched and seized Plaintiff in violation of his Fourth and Fourteenth Amendment rights.[23]

These allegations at the very least "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### 3. "Movers are improper parties to dispute/challenge the constitutionality of state laws."

---

[16] Amended Complaint at ¶ 25.

[17] Amended Complaint at ¶ 28.

[18] Amended Complaint at ¶ 45.

[19] Amended Complaint at ¶¶ 27, 56.

[20] Amended Complaint at ¶ 48.

[21] Amended Complaint at ¶ 48.

[22] Amended Complaint at ¶ 58.

[23] Amended Complaint at ¶¶ 73–77.

Defendants Potier, Morgan, and Myers also argue that they are not proper defendants under Count IV, which seeks to enjoin enforcement of La. R.S. § 14:97. They assert two bases for this argument. The first is that they would be acting as state officials when enforcing the state criminal statute. The second basis is that the Louisiana Attorney General is the proper party to defend the constitutionality of a Louisiana statute.

To the first point, Defendants rely on *Cain v. City of New Orleans*, No. 15-4479, 2017 WL 467685 (E.D. La. Feb. 3, 2017), in which the court found that the Orleans Parish Sheriff took on the role of a state actor when he executed his duties under La. R.S. §§ 22:822 and 13:1381.5, laws that directed the disposition of a commercial bail bond licensing fee. These laws required the sheriff to collect the fee and disburse portions of the fee to the District Court Judges' Judicial Expense Fund. The issue in *Cain*—the mandatory duty on an official to collect a state licensing fee—is significantly different from the case at bar: the discretionary enforcement of a state criminal statute by a municipal body and its agents.

*Cain* looked to *McMillian v. Monroe County*, 520 U.S. 781, 783 (1997), which analyzed whether an Alabama sheriff acted for the state or the county when he enforced laws. The *McMillian* analysis reviewed state law to determine whether the sheriff had a role as final policymaker for the county when he engaged in law enforcement. *Id.* at 785–86; *see also Daves v. Dallas Cnty., Tex.*, 22 F.4th 522 (5th Cir. 2022) ("A determination 'of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.' . . . Taking advantage of the alliteration opportunity, we summarize that *McMillian* holds we examine function, not funding, when deciding whether an official is acting for the state or local government in a case brought pursuant to Section 1983.")

Here, the defendants are municipal actors. The relevant questions posed in *McMillian*—whether an enforcing official has final policymaking authority for a municipality and how the state law defines the enforcing official's role—both rule out the possibility that any defendant in this case is a state actor. *See Northern Ins. Co. of New York v. Chatham County, Ga.*, 5447 U.S. 189, 193–95 (2006). Defendants exercise their discretionary enforcement power as municipal officials and have no authority as state actors under the Louisiana Constitution or its statutes. To find otherwise would upend decades of § 1983 jurisprudence holding that municipal officials engaging in law enforcement functions are not state actors and may not avail themselves of sovereign immunity.

Second, 28 U.S.C. § 2403(b) stipulates that if the constitutionality of a state statute is challenged in a case in which there are no state officials as parties, "the court shall certify such fact to the attorney general of the State, and shall permit to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality." Neither this federal statute nor its state-law analogue, La. R.S. § 49:257(C), prevent a municipality or its employees from being enjoined from unconstitutional enforcement of a state law.

### 4. "Former Interim Chief Morgan and Officer Myers are entitled to qualified immunity."

Defendants Morgan and Myers argue that qualified immunity shields them from liability in their individual capacities. To start, Plaintiff seeks damages only in Counts I (challenge to Code § 62-71), V (Fourth Amendment retaliatory arrest), and VI (state law challenge to restriction of speech), so Defendants' qualified immunity defense is limited to those counts. The remaining counts seek equitable relief only, rendering qualified immunity is inapplicable. *Johnson v. Bowe*, 856 F. App'x 487, 490–91 (5th Cir. 2021) ("Qualified immunity applies only to claims for money

damages.") (internal citation omitted).

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (citation omitted). To defeat qualified immunity at the motion to dismiss stage, a plaintiff must allege first a violation of a constitutional right and second, that defendants' actions "were objectively unreasonable in light of clearly established law." *Villarreal v. City of Loredo, Texas*, 17 F.4th 532 538 (5th Cir. 2021) (citation omitted). "The central concept is that of fair warning." *Id.* at 539 (internal citations omitted).

Because Plaintiff has alleged a violation of a clearly established constitutional right, Defendants are not entitled to qualified immunity, or at the very least, the Court should allow limited discovery before deciding the qualified immunity question. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (a court "may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense").

**A. Plaintiff has alleged a violation of a constitutional right.**

Plaintiff alleges that Defendants, including Defendants Morgan and Myers, violated his First Amendment rights by infringing on his constitutional right to request charitable donations from the public. Specifically, Plaintiff alleges that Defendants have twice cited and arrested him for violations of Code § 62-71 ("Begging and Soliciting Money"), which explicitly regulates the content of speech for some members of the public but exempts individuals engaging in the same speech on behalf of "bona fide charitable organizations," in violation of his constitutional rights.[24]

Plaintiff also alleges that Defendant Myers violated his First and Fourth Amendment rights

---

[24] Amended Complaint at ¶¶ 46–59.

11

by arresting him in retaliation for his exercise of First Amendment rights.[25] To establish such a claim, Plaintiff "must show that (1) [he] w[as] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [his] exercise of constitutionally protected conduct." *Villarreal*, 17 F.4th 532, 542 (5th Cir. 2021) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Plaintiff has alleged that he was engaged—and will continue to engage—in the constitutionally protected activity of begging;[26] he was arrested twice for engaging in protected speech and threatened by Defendant Myers that if he continued, "it's not going to be nice"[27]; and that Defendants' targeted enforcement certain homeless residents was "substantially motivated" by Defendants' desire to stop panhandlers from exercising their free speech rights.[28]

Plaintiff has alleged violations of a constitutional right.

**B. The right was clearly established at the time of the incident.**

The Fifth Circuit identifies "clearly established" rights by looking to either a "controlling authority—or a 'robust consensus of persuasive authority'" that defines the right in question. *Morgan v. Swanson*, 659 F.3d 359, 371–71 (5th Cir. 2011). The plethora of controlling authority—from the Supreme Court, Fifth Circuit, and Louisiana federal courts—and persuasive authorities from around the country all make clear that panhandling is protected speech, and laws prohibiting panhandling are illegal content-based restrictions.

The Supreme Court has long held that "charitable appeals for funds, on the street . . .

---

[25] Amended Complaint at ¶¶ 73–77.

[26] Amended Complaint at ¶ 46.

[27] Amended Complaint at ¶ 48.

[28] Amended Complaint at ¶¶ 22–23.

involve[s] a variety of speech interests." *Vill. Of Shaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). The distinction between an individual and an organization seeking donations is not "a significant one for First Amendment purposes." *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 664 (E.D. La. 2017) (citing cases).

The question of the constitutionality of panhandling statutes was answered definitively in 2015, when the Supreme Court decided *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). There the Supreme Court considered a challenge to a municipal ordinance that prohibited the display of signs on private or public property without a permit. The Court held that the ordinance was content-based and subject to strict scrutiny. *Id.* at 163–64 ("Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny."). Days later, the Supreme Court vacated the First Circuit's opinion in *Thayer v. City of Worcester* concerning a panhandling statute and remanded for reconsideration in light of *Reed*[29]; the district court struck down the panhandling statute as a content-based restriction that failed strict scrutiny.[30]

Since *Reed*, courts around the country have struck down anti-panhandling laws as content-based restrictions on speech. *See, e.g.*, *Blitch*, 260 F. Supp. 3d at 664 ("Plaintiffs have a First Amendment right to panhandle in Slidell.")[31]; *Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) (city's anti-panhandling ordinance was not content-neutral, and thus violated free speech

---

[29] *Thayer v. City of Worcester*, 576 U.S. 1048 (2015).

[30] *Thayer v. City of Worcester*, 144 F. Supp.3d 218 (D. Mass. 2015).

[31] The City of Slidell knew that it could not credibly argue that a person's desire to ask for charity was not protected speech. *See Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 663 (E.D. La. 2017) ("The threshold merits issue is whether plaintiffs' desire to ask for charity is even protected by the First Amendment. Plaintiffs argue that it is. Slidell, without affirmatively taking a contrary position, implies that it is not.").

rights under the First Amendment); *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) ("[A]sking for charity or gifts, whether 'on the street or door to door,' is protected First Amendment speech."); *Homeless Helping Homeless, Inc. v. City of Tampa, Fla.*, No. 8:15-cv-1219, 2016 WL 4162882 (M.D. Fla. Aug. 5, 2016); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Colo. 2015); *Massachusetts Coal. for the Homeless v. City of Fall River*, 486 Mass. 437, 158 N.E.3d 856 (2020); *cf. McCraw v. City of Oklahoma City*, 973 F.3d 1057 (10th Cir. 2020) (striking down panhandling laws but declining to decide whether the ordinances were content-based or content-neutral, since the laws failed to meet even intermediate scrutiny).

Defendants' enforcing Code § 62-71 ("Begging and Soliciting Money") against panhandlers or beggars is a content-based restriction on protected speech. Defendant Myers cited Plaintiff with Code § 62-71, which prohibits someone in a public space in Lafayette who "solicits money or anything of value" from someone within arm's length.[32] An outstretched palm or mere rattling of a change cup could violate this law. Further, under Code § 62-71, persons engaging in speech with another within arm's length is not subject to criminal liability as long as they are not asking for charitable donations. The law criminalizes only the speech of an individual who exercises his right to request a donation in a public space and discriminates among viewpoints by exempting firefighters and other "bona fide charitable organizations." *See Citizens United*, 558 U.S. at 310, 340 (2010) ("Speech restrictions based on the identity of the speaker are all too often simply a means to control content."). Code § 62-71 is a textbook content-based restriction under *Reed* and its progeny.

---

[32] The ordinance is not limited to the spoken word; it extends to "written, or printed word or such other acts or bodily gestures as are conducted in furtherance of the purposes of obtaining charitable or gratuitous donations, contributions or alms." Code § 62-71(a).

14

This is not a close case. Plaintiff's constitutional right to panhandle, and the challenged ordinances' unconstitutional restriction of that right, are obvious. "An official who commits a patently 'obvious' violation of the Constitution is not entitled to qualified immunity." *Villarreal*, 17 F.4th at 540. In light of the clear binding and persuasive precedent, Defendants Morgan and Myers had "fair warning" that Lafayette's panhandling laws were unconstitutional. *Id.* at 539. At least one Defendant, Defendant Logan, admitted as much. He told the Lafayette Consolidated Government Council that "[u]nfortunately, the United States Supreme Court has said that panhandling is ok. So, if you say 'panhandlers,' it will be declared unconstitutional."[33] Defendants enforced the laws anyway.

Any reasonable police officer would know that the targeted enforcement of unconstitutional panhandling laws violates Plaintiff's First Amendment rights. As the Fifth Circuit recently explained when considering the qualified immunity defense on a motion to dismiss in the context of a First Amendment violation: "There is a big difference between 'split-second decisions' by police officers and 'premeditated plans to arrest a person . . . , especially by local officials who have a history of targeting [that person] because of [his speech]." *Villarreal*, 17 F.4th at 540–41.

To the extent that Defendant Morgan's and Myers' violations of Plaintiff's constitutional rights is not obvious, discovery is necessary to determine whether they acted reasonably. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (a court "may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense").

---

[33] Amended Complaint at ¶ 23.

Because Plaintiff has alleged a violation of a constitutional right, and the right was clearly established at the time of the incident, Defendants Morgan and Myers are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Respectfully submitted,

| | |
|---|---|
| */s/ Eric A. Foley* | */s/ Kristen D. Amond* |
| Eric A. Foley, La. Bar No. 34199, T.A. | Alysson L. Mills, La. Bar No. 32904 |
| Roderick & Solange MacArthur Justice Center | Kristen D. Amond, La. Bar No. 37011 |
| 4400 S. Carrollton Ave. | Mills & Amond LLP |
| New Orleans, LA 70119 | 650 Poydras Street, Suite 1525 |
| (504) 620-2259 (p) | New Orleans, Louisiana 70130 |
| (504) 208-3133 (f) | Telephone: (504) 383-0332 |
| eric.foley@macarthurjustice.org | Facsimile: (504) 383-0332 |
| | amills@millsamond.com |
| | kamond@millsamond.com |
| *Counsel for the Plaintiff* | |
| | *Counsel for the Plaintiff* |