UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| GEORGE K. HENAGAN<br><br>VERSUS<br><br>LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, MAYOR-PRESIDENT JOSH GUILLORY, CITY-PARISH ATTORNEY, GREGORY J. LOGAN, LT. SCOTT MORGAN, and OFFICER JOSHUA MYERS | CIVIL ACTION NO: 6:21-cv-03946<br><br>JUDGE ROBERT R. SUMMERHAYS<br><br>MAG. JUDGE PATRICK J. HANNA |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Dane S. Ciolino, La. Bar No. 19311
Clare S. Roubion, La. Bar No. 36042
LOUISIANA LEGAL ETHICS, LLC
Farnham Place
Metairie, LA 70005
(504) 975-3263
dane@daneciolino.com
clareroubion@lalegalethics.com

***Counsel for Gregory J. Logan***

JAMES H. GIBSON - #14285
MICHAEL O. ADLEY - #37009
GIBSON LAW PARTNERS, LLC
2448 Johnston Street (70503)
P.O. Box 52124
Lafayette, LA 70505
Telephone: 337-761-6025
Fax: 337-761-6061
Email: jimgibson@gibsonlawpartners.com
Email: michaeladley@gibsonlawpartners.com

***Counsel for Mayor-President Josh Guillory***

JOY C. RABALAIS (26476), T.A.
H. EDWARD BAROUSSE, III (28310)
JORDAN JOHN HENAGAN (36206) 18
GRANT R. SCHEXNAILDER (40040)
BORNE, WILKES & RABALAIS, LLC
Post Office Box 4305
Lafayette, LA 70502-4305
Telephone: (337) 232-1604, Ext. 232
Facsimile: (337) 232-1837
Email: rabalais@bornewilkes.com

***Counsel for Former Interim Chief Scott Morgan, In His Individual Capacity and Officer Joshua Myers, In His Individual Capacity***

1

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ 2

Table of Authorities ............................................................................................................ 3

    I.    Introduction ............................................................................................................ 5

    II.    Factual Background ............................................................................................... 5

    III.    Law and Argument ................................................................................................ 6

        A.    Legal Standards for Preliminary Injunction ............................................... 6

        B.    The Plaintiff Cannot Show that a Preliminary Injunction is Necessary to Prevent Irreparable Harm Before a Trial on the Merits Can Occur ............ 6

        C.    The Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits  9

        D.    Plaintiff cannot show that the supposed "threatened injury" outweighs the harm done by a preliminary injunction. The balance of equities and public interest favors the Defendants ................................................................... 17

    IV.    Conclusion ........................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

*Already, LLC. v. Nike, Inc.* 568 U.S. 85 (2013) ............ 13

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 2022 WL 1177494 (U.S. 2022) .. 11

*Clemmons v. Cong. of Racial Equal.*, 201 F. Supp. 737 (E.D. La. 1962) ............ 16

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579 (5th Cir.2013) ......... 7

*Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262 (5th Cir. 2012) ............ 8

*Evans v. Sandy City*, 944 F.3d 847 (10th Cir. 2019) ............ 15, 18

*Evans v. Sandy City*, 944 F.3d 847 (10th Cir.2019) ............ 14

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ............ 9

*Houston Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613 (5th Cir. 2007) ............ 13

*Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 668 F. Supp. 527 (M.D. La. 1987) ............ 15, 16

*Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494 (5th Cir. 1989) ............ 14

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir.2011) ............ 7

*Lyons v. City of Los Angeles*, 461 U.S. 95 (1983) ............ 10, 13

*Maryland v. King*, 133 S. Ct. 1, 3, 183 L. Ed. 2d 667 (2012) ............ 20

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985) ............ 7

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573 (E.D. La. 2016) ............ 20

*Monumental Task Committee, Inc. v. Fox*, 157 F.Supp.3d 573 (E.D. La. 2016) ............ 9

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) ............ 5

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406 (5th Cir. 2013) ............ 20

*Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988) ............ 13

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ............ 11, 12

*Roho, Inc. v. Marquis*, 902 F.2d 356 (5th Cir. 1990) ............................................................... 7

*Sossamon v. Lone Star State of Texas,* 560 F3d 316 (5th Cir. 2009) ........................................ 13

T*exas v. Seatrain Int'l, S. A.*, 518 F.2d 175 (5th Cir. 1975) ...................................................... 20

*Turner v. Texas Dep't of Crim. Just.*, 836 F. App'x 227 (5th Cir. 2020) .................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................... 8, 19

*World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336 (5th Cir. 2007). 14

*World Wide St. Preachers' Fellowship v. Town of Columbia, Louisiana*, 2005 WL 816228 (W.D. La. 2005) ................................................................................................................................ 14

**STATUTES**

La. Rev. Stat. § 14:97 ............................................................................................................ 5, 13

Lafayette City-Parish Consolidated Government Code of Ordinance § 62-68 ............................. 5

Lafayette City-Parish Consolidated Government Code of Ordinance § 62-71 ........................ 5, 11

Lafayette City-Parish Consolidated Government Code of Ordinance §62-32 ..................... 5, 9, 11

Lafayette City-Parish Consolidated Government Code of Ordinances §62-71 .................... 5, 9, 11

I.   INTRODUCTION

Plaintiff seeks an injunction to enjoin defendants from using Lafayette City-Parish Consolidated Government Code of Ordinances §§62-32, 62-68 and 62-71, as well as La. R.S. § 14:97, to cite or arrest him, claiming that use of the ordinances and statutes impermissibly curtails his freedom to request charitable donations [Doc. 61].

II.   FACTUAL BACKGROUND

The plaintiff, George K. Henagan, is a homeless man with a criminal history. On two occasions in November of 2020, the plaintiff was cited for violations of Lafayette City-Parish Consolidated Government Code of Ordinances § 62-71 "Begging and Soliciting Money." Rec. Doc.1 ¶¶ 41-44. The first citation was amended to a charge of Simple Obstruction of a Highway of Commerce, La. R.S. §14:97, but later dismissed. Rec. Doc.1 ¶ 42. The second charge was likewise amended to which the plaintiff pleaded no contest.[1] Rec. Doc. 1 ¶ 44. The plaintiff alleges that, prior to Josh Guillory's term as Mayor-President of Lafayette, police officers "would not bother to cite or arrest [him] for panhandling. Instead, they would allow him to continue asking for donations, or at most would simply ask him to move along." Rec. Doc. 1 ¶ 40.

On November 12, 2021, the plaintiff filed this lawsuit seeking "to remedy the past criminalization and prevent future criminalization of his exercise of free speech arising from the City of Lafayette's unconstitutional enforcement…" of certain city ordinances and La. R.S. §14:97, Simple Obstruction of a Highway of Commerce. Rec. Doc. 1 ¶ 1. He alleges that his claims arise under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United

---

[1] Defendants note that by plaintiff's admission, he pleaded "no contest" to the amended charge with regards to his November 28, 2020, citation. As such, any civil rights claims under 42 U.S.C. § 1983 that arise under the First or Fourth Amendments are barred by *Heck* and *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019).

States Constitution, as well as state laws protecting free speech. Rec. Doc. 1 ¶ 7. On February 22, 2022, the plaintiff filed the first amended complaint adding several allegations and re-urging many of their original allegations. Rec. Doc. 29.

On April 5, 2022, the plaintiff's filed the instant motion for preliminary injunction. *See* Rec. Doc. 64. Plaintiff's request that this "Court [] issue a preliminary injunction, enjoining Defendants from citing or arresting Mr. Henagan under the above ordinances and statute, which curtail his freedom to request charitable donations for himself." *See id*. Defendants now jointly file this opposition to the plaintiff's motion for preliminary injunction.

III.   LAW AND ARGUMENT

    A.   *Legal Standards for Preliminary Injunction*

"A preliminary injunction is an extraordinary remedy that should not be granted unless the movant has demonstrated, by a clear showing: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the nonmovant; and (4) that the injunction will not undermine public interests." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). Failure to satisfy any one of the four elements is fatal to a plaintiff's motion, and "[t]he decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985). Granting a preliminary injunction "is to be treated as the exception rather than the rule." See *id.*

    B.   *The Plaintiff Cannot Show that a Preliminary Injunction is Necessary to Prevent Irreparable Harm Before a Trial on the Merits Can Occur*

The Plaintiff has not shown that he is likely to suffer irreparable harm before a decision on the merits can be rendered and, therefore, has not met a critical element for a preliminary injunction. *See* 11A Wright & Miller, FED. PRAC. & PROC. CIV. § 2948.1 (3d ed.) ("Perhaps

the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."). Simply put, there is no need for "preliminary" relief when there exists no imminent threat that "would impair the court's ability to grant an effective remedy." *Id*. "[I]f a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief." *Id*. Moreover, the Fifth Circuit has defined irreparable harm to mean "harm for which there is no adequate remedy at law," such as monetary damages. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir.2013); accord *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir.2011); *see also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (cleaned up).

The Plaintiff has not demonstrated any imminent threat from the Defendants. To the contrary, the injunctive relief he seeks relates solely to hypothetical events that may arise at a speculative date in the future if Mr. Henagan continues begging for money from members of the public *and* law enforcement officers cite him for violations of the ordinances at issue. *See* Rec. Doc. 64-1. The Plaintiff does not, however, point to or provide evidence of any imminent investigation or threat that is likely to take place. Indeed, plaintiff must show that "irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id*. (alteration in original)(quoting Wright & Miller, *supra*, § 2948.1; *Morrell v. City of Shreveport*, 536 Fed.Appx. 433, 435 (5th Cir. 2013). In sum, even if a plaintiff demonstrates a strong likelihood of success on the merits, a preliminary

injunction may not be granted unless the plaintiff has shown a likelihood—not just a possibility—of irreparable harm. *See Winter*, 555 U.S. at 22–23 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); see also, *Monumental Task Committee, Inc. v. Fox*, 157 F.Supp.3d 573, 582-583 (E.D. La. 2016).

The Defendants are in the process of repealing Ordinance 62-32(a)(7) and 62-71. On Tuesday, April 19, 2022, the Lafayette City Council voted to introduce an ordinance repealing part of Lafayette City-Parish Consolidated Government Code of Ordinances §§ 62-32(a)(7) and 62-71. The City Council will consider and adopt the repeal of the ordinances at the May 3, 2022, City Council meeting. There is, therefore, no need for immediate interlocutory relief.

The Plaintiff devotes only three sentences of argument to this issue in his motion, stating, "[w]ithout intervention from the Court, Mr. Henagan will continue to suffer the imminent threat of criminal prosecution for the exercise of his right to freedom of speech. The violation of a constitutional right is an irreparable injury per se. 'The loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *See* Rec. Doc. 64 at 40. The Plaintiff's attempt to avoid an irreparable harm analysis by alleging a hypothetical constitutional injury fails as a matter of law. The Fifth Circuit has explained that a request for prospective injunctive relief cannot be based on past conduct when no present threat or impairment exists at the time the relief is sought. *Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. A preliminary injunction is not appropriate, however, unless the party seeking it can demonstrate that First Amendment interests are either threatened or in fact

8

being impaired at the time relief is sought. Thus, invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury.") (vacating preliminary injunction) (citations and alterations omitted).

The Plaintiff is not suffering an "imminent, non-speculative irreparable injury" because the government conduct he challenges, is not ongoing and occurred in the past. *See id.*; *see also Lyons v. City of Los Angeles*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects") (internal quotation omitted). To be entitled to injunctive relief, the Plaintiff must demonstrate ongoing and continuing conduct by the Defendants that presently harms his interests. He has not done so. The Plaintiff's failure to identify any imminent non-speculative injury to his First Amendment rights is fatal to his motion.

    C.    *The Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits*

Plaintiff begins his brief by raising constitutional concerns about an ordinance that was never enacted.[2] Plaintiff then complains about the treatment of Anthony Willis, who is not a party.[3] Plaintiff continues by leveling attacks against the Baton Rouge Police Department, which is also not a party. Reading Plaintiff's brief would likely leave one confused as to what issues are actually before this Court. Accordingly, it is worth reiterating the facts that Plaintiff seems to want to obscure.

Plaintiff has been arrested numerous times for a litany of criminal activity. Only two of the arrests are at issue in the present dispute. He has twice been charged with Simple Obstruction of a

---

[2] Doc. 64-1, at pgs. 6-7.
[3] Doc. 64-1, at pgs. 9-10.

Highway under La. R.S. § 14:97.[4] The first charge was dismissed.[5] He pled no contest to the second charge.[6]

Plaintiff, however, files this motion seeking to enjoin enforcement of a number of ordinances in addition to La. R.S. § 14:97. Plaintiff challenges Lafayette City-Parish Consolidated Government Code of Ordinances §§ 62-32, 62-68, and 62-71, and La. R.S. § 14:97 as unconstitutional and seeks to wholesale enjoin their enforcement. Plaintiff cannot demonstrate a likelihood of success on the merits of his claims. As such, this motion should be denied.

First, Plaintiff's entire brief hinges on a reading of *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), that the United States Supreme Court just reversed as "too extreme an interpretation of this Court's precedent."[7] The United States Supreme Court explained the "First Amendment allows for regulations of solicitation," reasoning as follows:

> This Court's First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral.
>
> Most relevant here, the First Amendment allows for regulations of solicitation—that is, speech requesting or seeking to obtain something or an attempt or effort to gain business. To identify whether speech entails solicitation, one must read or hear it first. Even so, the Court has reasoned that restrictions on solicitation are not content based and do not inherently present the potential for becoming a means of suppressing a particular point of view, so long as they do not discriminate based on topic, subject matter, or viewpoint.
>
> Thus, in 1940, the Court invalidated a statute prohibiting solicitation for religious causes but observed that States were free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience. Decades later, the Court reviewed just such a time, place, and manner regulation restricting all solicitation at the Minnesota State Fair, as well as all sale

---

[4] Doc. 1, at ¶ 42.

[5] *Id*.

[6] *Id*. at ¶ 44.

[7] *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 2022 WL 1177494, at *4 (U.S. 2022).

or distribution of merchandise, to a specific location. The State had applied the restriction against a religious practice that included soliciting donations for the support of the Krishna religion. As a result, members of the religion were free to roam the fairgrounds and discuss their beliefs, but they were prohibited from asking for donations for their cause outside of a designated location. The Court upheld the State's application of this restriction as content neutral, emphasizing that it applied evenhandedly to all who wished to solicit funds, whether for commercial or charitable reasons.[8]

Thus, Plaintiff's insistence that this Court apply strict scrutiny to the Statute and Ordinances at issue is simply incorrect and based on "too extreme an interpretation" of *Reed*.

Moreover, as Plaintiff is aware, LCG is in the process of repealing Ordinance 62-32(a)(7) and 62-71. An ordinance to repeal Ordinances §§ 62-32(a)(7) and 62-71 was introduced on April 19, 2022. It will be presented for final adoption on May 3, 2022.[9] Plaintiff's reply memorandum in support of this motion is due May 3, 2022. Accordingly, by the time this Court rules on this motion, the ordinances will have been repealed. "It goes without saying that disputes concerning repealed legislation are generally moot."[10]

---

[8] *Id.* at *6 (internal citations omitted).

[9] *See* Proceedings of Lafayette City Council Meeting, April 19, 2022, and Agenda Item No. C22-047-2022, April 19, 2022, attached *in globo* as Joint Defense Exhibit "A."

[10] *Houston Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 619 (5th Cir. 2007). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC. v. Nike, Inc.* 568 U.S. 85, 91 (2013) (some internal quotation marks omitted). Even if "the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit," the case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* (quotation omitted). A defendant who voluntarily has ceased the allegedly unlawful conduct bears the burden of showing "that the challenged behavior cannot reasonably be expected to recur." *Id.* at 96. A plaintiff cannot avoid dismissal based on mootness, however, merely by invoking "conjectural or hypothetical speculation" about future events. *See id.* at 97. Relatedly, the fact that a defendant engaged in an allegedly unlawful conduct in the past is insufficient to show that such conduct will recur. *See id.* The Supreme Court has "never held that a plaintiff has standing to pursue" non-monetary relief "merely on the basis of being 'once bitten.' Quite the opposite." *Id.* at 98 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding there was no jusiticiable controversy to support a declaratory judgment where

11

Thus, the only live dispute is over enforcement of Ordinance §62-68 and La. R.S. 14:97. Plaintiff seeks to enjoin Ordinance §62-68 and La. Rev. Stat. § 14:97, claiming the two are unconstitutional. The Ordinance and Statute are identical. Both prevent obstruction of a highway, providing, in pertinent part:

> Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.[11]

Notably absent from Plaintiff's brief is any mention of this Court's **prior** analysis of La. R.S. 14:97. This Court previously considered this statute and found it to be a permissible, content neutral restriction.[12] This Court agreed the statute furthered the significant government interest of "promoting safety and the orderly flow of traffic on public roads" and left open ample alternative channels of communication.[13]

This Court's prior opinion was correct. Courts, including the United States Fifth Circuit Court of Appeal ("Fifth Circuit"), have routinely held promoting safety and the orderly flow of

---

plaintiff had been subjected to a chokehold in the past). "Although voluntary cessation of a challenged activity does not ordinarily deprive a federal court of its power to determine its legality, courts are justified in treating a voluntary governmental cessation of potentially wrongful conduct with solicitude." *Turner v. Texas Dep't of Crim. Just.*, 836 F. App'x 227, 229 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2681 (2021) (citing *Sossamon v. Lone Star State of Texas,* 560 F3d 316, 325 (5th Cir. 2009)). "Such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)). Thus, "without evidence to the contrary, courts assume formally announced changes to policy are not mere litigation posturing." *Id.* at 229.

[11] La. R.S. 14:97; Ordinance §62-68.

[12] *World Wide St. Preachers' Fellowship v. Town of Columbia, Louisiana*, 2005 WL 8162284, at *12 (W.D. La. 2005)

[13] *Id*. This Court was subsequently reversed because the Town of Columbia did not present any evidence that its police officers relied on these statutes when removing the plaintiffs. The United States Fifth Circuit, however, made no determination as to this Court's interpretation. Accordingly, this opinion is still persuasive authority. *World Wide St. Preachers Fellowship v. Town of Columbia,* 245 F. App'x 336, 346 (5th Cir. 2007).

12

traffic is a significant government interest.[14] Preventing pedestrians from intentionally or negligently obstructing a highway undoubtedly serves this interest. After all, "[i]t requires neither towering intellect nor an expensive 'expert' study to conclude that mixing pedestrians and temporarily stopped motor vehicles in the same space at the same time is dangerous."[15]

The remaining State Statute and Ordinance are narrowly tailored to serve this significant governmental interest. "To be narrowly tailored, the Ordinance must not burden substantially more speech than is necessary to further the government's legitimate interests."[16] The United States District Court for the Middle District of Louisiana aptly described the safety risk as follows:

> One must bear in mind that a motor vehicle temporarily stopped at a traffic light is in operation—its engine is running and the transmission is usually in gear so that if the distracted driver's foot slips off the brake, the vehicle will begin to move. It may run over the solicitor or it may rear-end the car ahead of it or otherwise cause an accident.[17]

In affirming the Middle District's opinion, the Fifth Circuit agreed "there is no way that such activities can be made safe."[18] Thus, it can hardly be imagined how the Ordinance and Statute could be any more narrowly tailored. Here, "the restriction is directly tailored to the danger."[19]

---

[14] *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497–98 (5th Cir. 1989); *see also Evans v. Sandy City*, 944 F.3d 847 (10th Cir.2019) ("No one disputes the Ordinance [,which made "it illegal for any person 'to sit or stand, in or on any unpaved median, or any median of less than 36 inches for any period of time' "] serves a significant government interest in promoting public safety").

[15] *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 668 F. Supp. 527, 530 (M.D. La. 1987), *aff'd*, 876 F.2d 494 (5th Cir. 1989)

[16] *Evans v. Sandy City*, 944 F.3d 847, 856 (10th Cir. 2019).

[17] *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 668 F. Supp. 527, 530 (M.D. La. 1987), *aff'd*, 876 F.2d 494 (5th Cir. 1989).

[18] *Int'l Soc. for Krishna Consciousness of New Orleans, Inc.*, 876 F.2d at 498.

[19] *Evans*, 944 F.3d at 879.

Lastly, the Statute and Ordinance leave open ample alternative channels of communication. Pedestrians are only prohibited from negligently or intentionally obstructing the highway. Otherwise, pedestrians are free to communicate however and wherever they may choose.

Moreover, similar, and in some instances more restrictive, regulations have been upheld as constitutional. For example, the United States District Court for the Eastern District of Louisiana previously provided:

> A city ordinance or a state or federal statute prohibiting persons whose presence interfere with the free use of the streets and sidewalks from remaining thereon after being ordered to disperse by police officers is not unconstitutional as tending to abridge freedom of speech or assembly.[20]

Likewise, the Fifth Circuit, in *International Society for Krishna Consciousness of New Orleans*, upheld a much more restrictive ordinance enacted by the City of Baton Rouge and the Parish of East Baton Rouge (collectively, "Baton Rouge"). The ordinance provided, in pertinent part:

> No person shall be upon or go upon any street or roadway or shall be upon or go upon any shoulder of any street or roadway nor shall any such person be upon or go upon any neutral ground of any street or roadway for the purpose of soliciting employment, business, or charitable contributions of any kind from the occupant of any vehicle.[21]

First, the Fifth Circuit explained the ordinance was narrowly tailored to serve the significant government interest of ensuring the normal and safe flow of traffic in Baton Rouge.[22] The court pointed out that even the "Supreme Court ha[d] recognized the substantial risk of

---

[20] *Clemmons v. Cong. of Racial Equal.*, 201 F. Supp. 737, 748 (E.D. La. 1962).

[21] *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 495–96 (5th Cir. 1989).

[22] *Id*. at 497.

disruption in crowd or traffic control that may be presented by solicitation of contributions."[23] The court described the safety risk as follows:

> [S]uccessful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver. The direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection.[24]

The court agreed "there is no way that such activities can be made safe" and that the ordinance was narrowly tailored to address this safety risk.[25]

The Fifth Circuit then explained the ordinance left open ample alternative channels of communication.[26] For example, solicitations could still be made door-to-door, via telephone, or from pedestrians.[27] Moreover, other forms of communication and expression like oral advocacy and distribution of literature were not prohibited.[28]

More recently, in *Evans v. Sandy City*, the United States Tenth Circuit Court of Appeal ("Tenth Circuit") upheld an ordinance that made "it illegal for any person "to sit or stand, in or on any unpaved median, or any median of less than 36 inches for any period of time.'"[29] The plaintiff complained the ordinance restricted his ability to panhandle and solicit financial support.[30] The

---

[23] *Id.*

[24] *Id.* at 498.

[25] *Id.* (internal citations omitted).

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Evans v. Sandy City*, 944 F.3d 847, 851-52 (10th Cir.2019).

[30] *Id.* at 852.

Tenth Circuit reasoned the ordinance served the significant government interest of promoting free flow of traffic and pedestrian and vehicle safety, stating:

> [T]he Ordinance promotes public safety in a direct and effective way by keeping pedestrians off thin slices of pavement and unpaved traffic dividers where pedestrians could be injured by passing traffic.[31]

The court found the ordinance was narrowly tailored to serve this interest since it only prohibited "sitting or standing on narrow or unpaved medians where it would be dangerous to do so."[32] Lastly, the court found the ordinance left open many alternative channels for communication, like city parks, city sidewalks, and medians larger than 36 inches.[33] Accordingly, the court upheld that ordinance as constitutional.

Here, again, the Statute and Ordinance being challenged are content neutral. This Statute and Ordinance make no exceptions—they do not target a particular type of obstruction or group. They are directly tailored to further a significant government interest and leave open many alternative channels of communication. Enforcement of this Statute and Ordinance do not so narrowly restrict Plaintiff's rights so as to be deemed unconstitutional, or to warrant an injunction enjoining enforcement altogether. Rather, enforcement merely serves to keep the public, including Plaintiff, safe. The Statute and Ordinance do not prohibit Plaintiff from soliciting donations. He is merely prohibited from obstructing the highways and endangering himself and others. Accordingly, Plaintiff cannot show a likelihood of success on the merits of his claim and this motion should be denied.

---

[31] *Id.* at 856.
[32] *Id.* at 858.
[33] *Id.* at 860.

> D. *Plaintiff cannot show that the supposed "threatened injury" outweighs the harm done by a preliminary injunction. The balance of equities and public interest favors the Defendants*

The Plaintiff's inability to meet the first and second prongs above is dispositive and this Court need go no further. However, the Plaintiff also cannot show that the supposed "threatened injury" outweighs the harm done by a preliminary injunction.

The Plaintiff has failed to demonstrate irreparable harm or a likelihood of success on the merits; additionally, the balance of equities and public interest factors weighs strongly in favor of Defendants and against granting interlocutory relief. When an important public interest has been established, such as outlined in the jurisprudence above-cited, the balance of harm to the interest advanced by the Plaintiff must be critically examined before a preliminary injunction's issuance. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008). Plaintiff must also establish that his purported substantial injury outweighs the threatened harm to the parties whom he seeks to enjoin and that granting the preliminary injunction will not disserve the public interest. This requires a balancing of harms to the parties, which involves an evaluation of the severity of the impact on the defendants should the temporary injunction be granted and the hardship that would occur to the plaintiff if the injunction should be denied. In addition, the court must consider whether an injunction would injure the public interest. However, there is no need to weigh relative hardships which a preliminary injunction or the lack of one might cause the parties, unless the plaintiff can show some likelihood of ultimate success. T*exas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 605 (E.D. La. 2016).

Defendants' continued enforcement of La. R.S. 14:97 and/or LCG Ordinance §62-68 no doubt promotes public safety generally, and specifically, keeps in place laws which are designed and used to protect pedestrians, as well as the drivers on Lafayette's roadways. In fact, the Fifth

Circuit has held that "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013). Similarly, Chief Justice Roberts has explained that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3, 183 L. Ed. 2d 667 (2012) (Roberts, Circuit Justice); *Accord*, *Monumental Task Comm., Inc., supra* at 605. Therefore, the balance of harms does not weigh strongly in favor of an injunction.

On this showing, plaintiff has not and cannot demonstrate that the balance of equities or public interest favors issuance of a preliminary injunction; therefore, defendants pray that plaintiff's request for injunctive relief and/or an Order enjoining enforcement of the challenged statute and ordinance be denied.

IV. CONCLUSION

Based on the foregoing, defendants show that plaintiff is not entitled to a preliminary injunction, that the requested relief, in part, has been rendered moot with the upcoming repeal of two of the challenged ordinances, and that defendants should not otherwise be enjoined from future enforcement of La. R.S. 14:97 and/or LCG Ordinance §62-68.

AND FOR ALL JUST AND EQUITABLE RELIEF, ETC.

Respectfully submitted,

GIBSON LAW PARTNERS, LLC
Attorneys at Law

*/s/ Michael O. Adley*
JAMES H. GIBSON - #14285
MICHAEL O. ADLEY - #37009
2448 Johnston Street (70503)
P.O. Box 52124
Lafayette, LA 70505
Telephone: 337-761-6025
Fax: 337-761-6061
Email: jimgibson@gibsonlawpartners.com
Email: michaeladley@gibsonlawpartners.com

*Counsel for Defendant,*
*Mayor-President Josh Guillory*

s/Dane S. Ciolino
Dane S. Ciolino, La. Bar No. 19311
Clare S. Roubion, La. Bar No. 36042
LOUISIANA LEGAL ETHICS, LLC
18 Farnham Place
Metairie, LA 70005
(504) 975-3263
dane@daneciolino.com
clareroubion@lalegalethics.com

Counsel of Record for Gregory J. Logan

s/Joy C. Rabalais
JOY C. RABALAIS (26476), T.A.
H. EDWARD BAROUSSE, III (28310)
JORDAN JOHN HENAGAN (36206)
GRANT R. SCHEXNAILDER (40040)
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, Louisiana 70502-4305
Telephone: (337) 232-1604 Ext. 232
Facsimile: (337) 232-1837
E-mail: rabalais@bornewilkes.com

Counsel for Former Interim Chief Scott Morgan,
In His Individual Capacity and
Officer Joshua Myers, In His Individual
Capacity