UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**GEORGE K HENAGAN**                    **CASE NO.  6:21-CV-03946**

**VERSUS**                              **JUDGE ROBERT R. SUMMERHAYS**

**CITY OF LAFAYETTE ET AL**             **MAGISTRATE JUDGE PATRICK J. HANNA**

## REPORT AND RECOMMENDATION

Before the Court are motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by defendants Lafayette City-Parish Government ("LCG"),[1] Lafayette Mayor-President Josh Guillory ("Mayor"),[2] Lafayette City-Parish Attorney Greg Logan ("Logan"),[3] former interim Lafayette Chief of Police Scott Morgan ("Chief Morgan") and Lafayette Police Officer Joshua Myers ("Officer Myers").[4] These motions are opposed by plaintiff George K. Henagan ("Plaintiff" or "Henagan").[5] The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that the motions before the Court be GRANTED in part and DENIED in part.

---

[1]   Rec. Doc. 54.
[2]   Rec. Doc. 55.
[3]   Rec. Doc. 57.
[4]   Rec. Doc. 58.
[5]   Rec. Docs. 67, 68, 69, 70.

## **Factual Background**

Plaintiff is a homeless citizen of Lafayette Parish who filed the instant suit pursuant to 42 U.S.C. § 1983 alleging violations of his First, Fourth and Fourteenth Amendment rights, as well as corresponding Louisiana constitutional violations.[6] Plaintiff was cited twice for violations of former Lafayette Code § 62-71, a municipal ordinance which prohibited, *inter alia*, the solicitation of charitable donations or alms from operators of motor vehicles in traffic on a public street.[7] Plaintiff's first citation was issued on November 12, 2020 after officers with the Lafayette Parish Police Department ("LPD") encountered Henagan near the intersection of West Congress Street and West University Avenue in Lafayette, Louisiana.[8]  Plaintiff was cited for violation of § 62-71, specifically "attempting to obtain money from cars in roadway with a sign."[9]  Plaintiff received his second citation for violation of § 62-71 on November 28, 2020 for "holding sign soliciting alms" on a sidewalk near South College Road in Lafayette, Louisiana.[10]  In both instances, a charge was filed against Mr. Henagan in Lafayette City Court and subsequently amended to a single count of Simple Obstruction of a Highway in violation of La. R.S. § 14:97.[11]  Plaintiff's November 12, 2020 misdemeanor charge

---

[6]      Plaintiff's First Amended Complaint ("FAC") at R. 29, pp. 12 – 17.
[7]      http://lafayette-la.elaws.us/code/coor_ch62_arti_div2_sec62-71 .
[8]      FAC at ¶ 48.
[9]      *Id.*
[10]     *Id.* at ¶ 50.
[11]     *Id.* at ¶¶ 49, 51.

was dismissed, but Plaintiff eventually pled no contest to the November 28, 2020 charge, for which he was sentenced to serve thirty (30) days in Lafayette Parish Correctional Center ("LPCC").[12]

Plaintiff filed the instant suit on November 12, 2021, asserting federal and Louisiana constitutional claims against Mayor Guillory in his individual capacity, Logan in his individual capacity, Chief Morgan in his individual capacity, Officer Myers in his individual capacity, and LCG.[13]  Plaintiff's suit seeks damages, as well as declaratory and injunctive relief.[14] Plaintiff's suit presents both facial and as-applied challenges to La. R.S. 14:97 and Laf. Ord. §§ 62-32, 62-68, and 62-71.[15] Pursuant to Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403(b), Plaintiff's constitutional challenge to La. R.S. § 14:97 was certified by the Court to the Louisiana Attorney General.[16]

Defendants filed the pending motions seeking dismissal under Fed. R. Civ. P. 12(b)(6) based on various theories of law.  The motions are fully briefed and properly before the undersigned for review.  Although the Louisiana Attorney General has

---

[12]     *Id.* at ¶¶ 49, 51.
[13]     Rec. Docs. 1, 29.  Plaintiff's Amended Complaint, filed on February 22, 2022, substituted LCG in place of the formerly named "City of Lafayette" and omitted claims against former defendant Monte Potier, current Lafayette Chief of Police.
[14]     FAC at p. 18.
[15]     *Id.*
[16]     Rec. Doc. 78.

not intervened in this suit, an *amicus curiae* brief was filed on Attorney General Landry's behalf.[17]  This Court addresses each motion in turn, below.

## Rule 12(b)(6) Standard

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto.[18] The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[19] However, conclusory allegations and unwarranted deductions of fact are not accepted as true.[20]  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[21]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[22]  The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a

---

[17]     Rec. Doc. 81-3.
[18]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004).
[19]     *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).
[20]     *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498.
[21]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[22]     *Bell Atlantic*, 127 U.S. at 570.

suspicion [of] a legally cognizable right of action."[23]  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[24]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[25]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26]  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[27]  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[28]

## Analysis

---

[23]    *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

[24]    *Id.* (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[25]    *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[26]    *Ashcroft v. Iqbal*, 556 U.S. at 678.

[27]    *Id.* at 679.

[28]    *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).  See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008).

I.     <u>Are Plaintiff's claims barred by the *Heck* doctrine?</u>

Plaintiff's claims seek declaratory and injunctive relief as to the constitutionality of specified Lafayette municipal ordinances and a single Louisiana criminal statute.[29]  Additionally, Plaintiff seeks monetary relief for violation of his federal and Louisiana constitutional rights stemming from his November 12, 2020 arrest and misdemeanor citation under 42 U.S.C. § 1983.[30]  Plaintiff's prayer for relief includes no § 1983 claim based on his November 28, 2020 arrest and citation, to which he subsequently entered a *nolo contendere* plea.[31]

§ 1983 imposes liability on persons who, under color of state law, deprive a person of "rights, privileges, or immunities secured by the Constitution and laws."[32] § 1983 is not, in and of itself, a source of substantive rights.  Instead, § 1983 grants a cause of action for the enforcement of rights otherwise conferred.[33]

The *Heck* doctrine dictates that a plaintiff convicted of a crime may not prosecute claims for constitutional violations when such claims arise from the same facts involved in a charge for which the plaintiff was convicted unless plaintiff shows

> that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[34]

---

[29]     Laf. Ord. § 62-32, 62-68, 62-71 and La. R.S. § 14:97.  FAC at p. 18.
[30]     FAC at ¶ 58.
[31]     *Id.* at p. 18.
[32]     42 U.S.C. § 1983.
[33]     *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).
[34]     *Heck v. Humphries*, 512 U.S. 477 (1994).

§ 1983 claims are barred by operation of the *Heck* doctrine when such claims challenge convictions arising from the same facts giving rise to the § 1983 claim.[35]

Regarding Plaintiff's Louisiana constitutional claims, under Louisiana law,

> [a] judgment entered on a plea of nolo contendere adjudicates guilt with the same finality and force as a judgment entered pursuant to a guilty plea or a conviction following trial.  It is well settled that a plea of nolo contendere admits every essential element of the offense (that is) well pleaded in the charge.[36]

Louisiana courts apply *Heck* in the same manner as federal courts, finding state law civil actions are precluded when Plaintiff's success on such claims would invalidate the prior conviction.[37]  In a *Heck* analysis, a *nolo contendere* plea is not used as an admission of guilt but is considered to determine whether Plaintiff's current claims bear upon the validity of the prior conviction arising from the same facts.[38]

Plaintiff's November 12, 2020 arrest and citation resulted in dismissal of the charge as amended.  Plaintiff's November 28, 2020 arrest and citation resulted in a *nolo contendere* plea and subsequent sentence to thirty (30) days in jail.  Plaintiff's claims in this suit allege that his arrest on November 12, 2020 violated his

---

[35]    *Id.*
[36]    *United States v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981).
[37]    *Anderson v. City of Minden*, 2009 WL 1374122, *6 (W.D. La. 5/15/09).
[38]    *Wallace v. Lee*, 2002 WL 31175219,  *4 (E.D. La. 2002).

constitutional rights under the First, Fourth and Fourteenth Amendments to the federal constitution, as well as Article I, Section 7 of the Louisiana constitution

For this reason, any purported claims by Plaintiff arising from his November 28, 2020 arrest and subsequent *nolo contendere* plea are barred by application of the *Heck* doctrine.[39] Conversely, Plaintiff's November 12, 2020 arrest and citation did not result in a conviction and, thus, does not act as a bar under *Heck*.[40] This Court will recommend denial of Defendants' motions to dismiss to the extent that such motions seek dismissal based on application of the *Heck* doctrine as to Plaintiff's November 12, 2020 arrest and citation and will recommend such motions be granted as to any purported claims arising from Plaintiff's November 28, 2020 arrest and citation.

## II.   Constitutionality of Panhandling

The First Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."[41] A law limiting or prohibiting speech based on its content in a traditional public fora is presumed unconstitutional and justified only when the originating government demonstrates such law is "narrowly tailored to

---

[39]   *Wallace v. Lee*, 2002 WL 31175219 *4 (E.D. La. 2002) (collecting cases).
[40]   *Lemoine v. Wolfe*, 168 So.3d 362 (La. 2015) (affirming that a *nolle prosequi* termination of criminal charges is a bona fide termination in favor of the accused under Louisiana law).
[41]   U.S. CONSTITUTION, amend. 1.

serve compelling state interests."[42] Laws that target "particular speech because of the topic discussed or the idea or message expressed" are "content based" and subject to strict scrutiny.[43] A "content based" law draws distinctions between permissible and impermissible speech, whether on its face or by necessary implication.[44] "As a general rule, in such a forum the government may not 'selectively…shield the public from some kinds of speech on the ground that they are more offensive than others.' "[45]

Jurisprudence considering the constitutionality of anti-panhandling ordinances is legion. District and appellate decisions, drawing on prior Supreme Court opinions, apply the foundational principle that solicitation of a charitable donation of anything of value by an individual (i.e., panhandling) is protected speech under the First Amendment.[46] As noted in *Blitch v. City of Slidell*, not all government regulation of protected speech is unconstitutional, however.[47] Thus, an

---

[42]     *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) and *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991); *U.S. v. Grace*, 461 U.S. 171, 180 (1983) (sidewalks and public streets enjoy special status regarding First Amendment rights because of their traditional role as places of discussion and debate); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983) (traditional public fora "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."); *Carey v. Brown*, 447 U.S. 455 (1980) ("When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial public interests, and the justifications offered for any distinctions it draws must be carefully scrutinized.").
[43]     *Id.*, citing *Sorell v. IMS Health, Inc.*, 564 U.S. 552, 564-65 (2011), *Carey v. Brown*, 447 U.S. 455, 462 (1980), and *Police Dept. of Chicago v. Mosely*, 408 U.S. 92, 95 (1972).
[44]     *Id.* citing *Sorell*, 564 U.S. at 564.
[45]     *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) quoting *Erznoznik v. Jacksonville*, 422 U.S. 205, 209 (1975).
[46]     *Blitch v. City of Slidell*, 260 F.Supp.3d 656, 664 (E.D. La. 2017) citing *Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 632 (1980); *Messina v. City of Fort Lauderdale*, 546 F.Supp.3d 1227, 1237 (S.D. Fla. 2021) citing *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999).
[47]     *Blitch*, 260 F.Supp.3d at 664 citing *Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015).

9

anti-panhandling ordinance is not necessarily unconstitutional because it addresses protected speech. Rather, courts faced with First Amendment challenges to municipal ordinances, as here, must begin by determining whether the ordinance at issue is content based or content neutral on its face.[48]

A law is content based when it "'expressly draws distinctions based on…communicative content.'"[49]  "A regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same thing."[50] A content based restriction on speech is "'presumptively unconstitutional'" and is subject to strict scrutiny.[51]  Strict scrutiny requires the government to demonstrate the ordinance is "'narrowly tailored to serve compelling state interests.'"[52]

III.    <u>Constitutional challenges to municipal and state law</u>

Former Laf. Ord. § 62-71 is, as alleged by Plaintiff, content-based on its face. Sec. 62-71 made it a misdemeanor criminal offense to, *inter alia*, "solicit money or anything of value, or to solicit the sale of goods or services, from any operator of a motor vehicle that is in traffic on a public street..."[53] Subsection (d) lists exemptions, to which the prohibitions of the ordinance shall not apply.  Exemption (1) includes

---

[48]    *Messina*, 546 F. Supp.3d 1227, 1238 citing *Reed*, 576 U.S. at 163.
[49]    *Supra*, quoting *Reed*, 576 U.S. at 165.
[50]    *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, _____ U.S. _____, 142 S.Ct. 1464, 1474 (2022)
[51]    *Messina*, at 1237 quoting *Reed*, 576 U.S. at 155.
[52]    *Id.*
[53]    Laf. Ord. § 62-71(b)(6).  Repealed by CO-047-2022 (5/3/2022).

"[a] professional firefighters association or other nonprofit organization who solicits contributions, as a member of such association, on behalf of bona fide charitable organizations."[54]  Exemption (2) includes "[a] person who is conducting an activity that has been authorized by the issuance to such person a permit pursuant to section 70-61 of this Code."  Thus, solicitation to vehicles in traffic is permissible when conducted by a charitable organization, while the same solicitation conducted for personal benefit constitutes criminal behavior.  Former Laf. Ord. § 62-71 draws a stark distinction based on "communicative content" by favoring charitable organizations over individuals engaged in the same conduct and is, therefore, content-based restriction of protected speech, on its face.[55]

Having established the content-based discriminatory character of former Laf. Ord. § 62-71, the Court now asks whether the provision is "finely tailored to serve substantial state interests."[56]  Defendants argue they "did not seek to prohibit passive panhandling, but instead sought to curtail dangerous conduct such as stepping into traffic while still complying with legal precedent."[57]  Former Laf. Ord. § 62-71 does

---

[54]    Laf. Ord. § 62-71(d)(1).

[55]    *Zillow, Inc. v. Bork*, 2020 WL 883849 *4 (E.D. Ky. 2022) (law exempting newspapers from fees charged to access tax rolls was unconstitutional content-based restriction on protected speech, noting speaker-based restrictions are considered content-based restrictions because they generally control content by including and exempting speakers); *Dumiak v. Village of Downers Grove*, 475 F.Supp.3d 851 (E.D. Ill. 2020) (ordinance prohibiting citizens from "stand[ing] on a highway for the purpose of soliciting contributions from the occupant of any vehicle except within a municipality when expressly permitted by municipal ordinance" was content based since it permitted the exemption of certain persons based on the purpose of the speech, i.e., charitable organizations); *Vigue v. Shoar*, 494 F.Supp.3d 1204 (M.D. Fl. 2020) (state statute requiring local government permit for charitable solicitation and exempting certain "registered charitable organizations" was content-based restriction, facially unconstitutional and insufficiently tailored to the asserted safety interest).

[56]    *Carey*, 447 U.S. at 461-62 (internal citations omitted).

[57]    Rec. Doc. 55-1 at p. 21.

not address the methods used to obtain donations of money or things of value, but rather addresses who may engage in solicitation of "any operator of a vehicle in traffic…" Also, because of subsection (d)(2) exemption, as to which Defendants offer no rationale for differing treatment relative to their stated goal of traffic safety, certain charitable organizations are permitted to undertake the same "dangerous conduct" forbidden of panhandlers. This Court finds, based on the plain language of the former ordinance, that it was not narrowly tailored to serve a compelling government interest, as required to pass strict scrutiny.[58] Former Laf. Ord. § 62-71 was, for this reason, unconstitutional under the First Amendment as facially content-based discrimination.

---

[58] *Carey v. Brown*, 447 U.S. at 461 (finding the challenged provision exempted labor organizations from its prohibition of picketing in certain public fora, unjustified by a substantial government interest); *Brewer v. City of Albuquerque*, 18 F.4th (10th Cir. 2021) (ordinance prohibiting pedestrians from, *inter alia*, occupying roadways and medians and interacting with vehicles in travel lanes was not narrowly tailored to serve the important government interests identified by the city); *Cutting v. City of Portland, Maine*, 802 F.3d 79 (1st Cir. 2015) (ordinance prohibiting persons from, inter alia, standing or sitting on medians except when engaged in crossing the street was overly broad in its infringement on protected speech and was not sufficiently tailored to the harm sought to be prevented); *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006) (ordinance forbidding solicitations and erection of tables in Las Vegas' Freemont Street Experience was unconstitutional regulation of protected speech not sufficiently tied to a compelling government interest); *Messina*, 546 F.Supp.3d at 1232 (ordinance prohibiting "aggressive panhandling" was an unconstitutional content-based regulation of speech, insufficiently tailored to a compelling government interest); *McCraw v. City of Oklahoma City*, 973 F.3d 1057 (10th Cir. 2020) (ordinance prohibiting sitting or standing in public median was not the least restrictive means of protecting public from dangerous traffic interference from pedestrians); *Rogers v. Stachey*, 382 F.Supp. 3d 869 (W.D. Ark. 2019) (finding an ordinance that prohibited panhandlers from "physical interaction…with the occupant of a motor vehicle…while the motor vehicle is in operation on a public roadway unless the vehicle is lawfully parked was facially unconstitutional as overbroad, since it singled out pedestrians and failed to address other logical traffic hazards); *Rodgers v. Bryant*, 301 F.Supp.3d 928 (E.D. Ark. 2017) (ordinance that made it a crime to "linger or remain in a public place…for the purpose of begging" was content-based regulation of protected speech with no logical tie to the stated government interest of traffic safety).

IV.    Was Plaintiff's First Amendment and Louisiana constitutional right sufficiently established at the time of the events at issue?

Having established that former Laf. Ord. § 62-71 does not survive strict scrutiny, the Court turns to the question, applicable to all individual liability claims in this case, of whether the constitutional right asserted by Plaintiff was "clearly established" at the time of events at issue.

In *Reed v. Town of Gilbert*,[59] the U.S. Supreme Court instructed that analysis of a challenged law must begin with the "crucial first step" of determining whether the challenged provision is content neutral.[60]  The *Reed* Court found Gilbert's sign ordinances to be content-based restrictions of protected speech and, noting the differing treatment afforded to various sign content, rejected the municipality's argument that its regulations served the compelling government interests of aesthetics and traffic safety.[61]

Post-*Reed* jurisprudence considering anti-panhandling law is voluminous. Although the Court is not required to base a finding as to clearly established right on identical jurisprudence,[62] we note that many cases consider provisions materially

---

[59]    576 U.S. 155 (2015).
[60]    *Id.* at 165.
[61]    *Id.* at 172-73.
[62]    *Villareal v. City of Laredo*, 17 F.4th 532, 540 (5th Cir. 2021) citing *Hope v. Pelzer*, 536 U.S. 730 (2002), 745 ("[t]he doctrine of qualified immunity does not always require the plaintiff to cite binding case law involving identical facts. An official who commits a patently 'obvious' violation of the Constitution is not entitled to qualified immunity.); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (rejecting the notion that qualified immunity protects officials unless the specific act in question has been held unlawful); *Dumiak v. Village of Downers Grove*, 475 F.Supp.3d 851, 854 (N.D. Ill. 2020) quoting *Hope, 536* U.S. at 741 (2002) (A right can be clearly established without a case directly on point: '[A] general constitutional rule already identified in the

similar to Laf. Ord. § 62-71.  Those cases have routinely applied *Reed* and its progeny to find an ordinance that restricts protected speech, but that also exempts a subset of citizens from the restriction is facially unconstitutional as a content-based restriction.[63]

Based on the foregoing, it is the finding of this Court that the right of citizens to engage in panhandling as protected speech was clearly established at the time of Plaintiff's November 12, 2020 arrest and misdemeanor citation.  Similarly, the unconstitutional nature of former Laf. Ord. § 62-71 was clear, based on the great weight of jurisprudence interpreting substantially similar law.[64]

Louisiana's constitutional protection of free speech is identical to that provided in the federal constitution.[65]  Similarly, Louisiana law applies qualified

---

decisional law may apply with obvious clarity to the specific conduct in question,' giving officials fair warning that their acts are unconstitutional) (internal citation omitted).

[63]    *See*, e.g., *Messina v. City of Fort Lauderdale, Florida*, 546 F.Supp.3d 1227, 1238 (S.D. Fl. 6/23/21) (collecting cases); *McLaughlin v. City of Lowell*, 140 F.Supp.3d 177 (D. Mass. 2015) (ordinance prohibiting, *inter alia*, panhandling in certain areas such as near ATMs and mass transportation was content-based and failed to survive strict scrutiny analysis); *Brown v. City of Grand Junction*, 136 F.Supp.3d 1276 (D. Co. 2015) (ordinance prohibiting panhandling during prescribed hours each day was facially unconstitutional); *Young v. New York Transit Authority*, 903 F.2d 146 (2nd Cir. 1990) (ordinance permitting charitable solicitations by registered or licensed charitable organizations was unconstitutional); *Perry v. Los Angeles Police Dept.*, 121 F.3d 1365 (9th Cir. 1997), cert. denied, 118 S.Ct. 1362 (U.S. 1998) (municipal ordinance banning solicitations along boardwalk was unconstitutional because of its exemption of non-profit organizations); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) (finding an ordinance permitting residential solicitations for only certain charitable organizations to be unconstitutional on its face).

[64]    Although subjective intent is not an appropriate consideration as to the various claims at issue in this case, this Court notes as an aside that Plaintiff's Amended Complaint cites testimony by Logan suggesting actual knowledge of the protected status of panhandling under the First Amendment, as well as the unconstitutional nature of former Laf. Ord. § 62-71, considering efforts to enact JO-079-2020 by Logan and Mayor Guillory.

[65]    *Clarkston v. White*, 943 F.3d 988, 992 n. 4 (5th Cir. 2019) (internal citations omitted).

immunity to state constitutional claims according to the same analysis of factors used in federal constitutional claims under § 1983.[66]

V.     Jurisdictional Concerns

Plaintiff asserts six (6) claims against defendants:

Count 1:     a facial challenge to former Lafayette Ordinance § 62-71 ("Begging and Soliciting of Money);

Count 2:     an as-applied challenge to Lafayette Ordinance § 62-32 ("Criminal Mischief");

Count 3:     an as-applied challenge to Lafayette Ordinance 62-68 ("Simple Obstruction of a Highway of Commerce");

Count 4:     as-applied and facial challenges to La. R.S. 14:97 ("Simple Obstruction of a Highway of Commerce);

Count 5:     a federal Fourth Amendment claim for retaliatory arrest pursuant to 42 U.S.C. § 1983; and

Count 6:     a Louisiana constitutional claim for violation of Art. I, Sec. 7, regarding freedom of speech.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."[67]   Whether a claim is fairly included within the ambit of federal courts' jurisdiction – the claim's "justiciability" – concerns a number of doctrines, including standing, mootness, and ripeness.[68]  Federal district

---

[66]     *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (internal citations omitted).
[67]     U.S. CONST. art. III, § 2.
[68]     *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714-15 (5th Cir. 2012) citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

courts have "an independent duty to examine the basis of [their] jurisdiction."[69]  This

duty compels analysis of Article III jurisdiction even, as here, where no party has

addressed it before the Court.

  A. <u>Standing</u>

  "Standing" refers to whether a plaintiff is the proper party to bring a matter

for adjudication.  The U.S. Supreme Court reduced standing to three necessary

elements: (1) an injury in fact; (2) a causal connection between the injury and the

conduct complained of; and (3) a likelihood that a favorable decision will provide

redress of plaintiff's injury.[70]

  An injury in fact is "an invasion of a legally protected interest which is (a)

concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical."[71]  "An allegation of future injury may suffice if the threatened injury

is 'certainly impending,' or there is a "'substantial risk' that the harm will occur."[72]

A threatened enforcement of a law may give rise to an injury in fact.  A plaintiff is

not required to subject himself to actual arrest, prosecution, or other acts of

enforcement to establish Article III standing.[73]  Where the injury in fact regards

threatened enforcement of a law, plaintiff must show "an intention to engage in a

---

[69] *Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 595 (5th Cir. 2017).
[70] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[71] *Id.*
[72] *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409, 415 n. 5 (2013) (internal citations omitted).
[73] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."[74]  Such claims are referred to as "pre-enforcement" constitutional challenges.

The Fifth Circuit highlighted the distinct jurisprudential treatment of First Amendment injuries, stating "[t]his court has repeatedly held, in the pre-enforcement context, that '[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury in fact requirement.'"[75]  The court explained that the unique nature of protected speech and self-censorship lend to the "unique standing issues" involved in a First Amendment challenge.[76]

Plaintiff's claims in this suit challenge the constitutionality of four (4) separate municipal ordinances and state criminal statutes.  Plaintiff was twice arrested and cited for violation of Laf. Ord. § 62-71, later amended to charges for violation of La. R.S. § 14:97.  Thus, as to these two laws, Plaintiff clearly demonstrates standing, as he has been subjected to actual enforcement in the form of arrest and successive charges.[77]  This Court also finds that Plaintiff's complaint alleges sufficient facts to establish his standing to bring First Amendment pre-enforcement challenges to both

---

[74]    *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).
[75]    *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020) quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007).  See also, *Glass v. Paxton*, 900 F.3d 233, 238 quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018) ("government action that chills protected speech without prohibiting it can give rise to constitutionally cognizable injury.")
[76]    *Speech First*, 979 F.3d at 331 citing, *inter alia*, *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) ("As the district court noted, '[t]he First Amendment challenge has unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself.' ").
[77]    FAC at ¶¶ 48-51.

Laf. Ord. §§ 62-32 and 62-68, neither of which constitute the basis for any prior enforcement action against Plaintiff. Specifically, Plaintiff alleges facts demonstrating he plans to continue panhandling; that Defendants employ these two ordinances to curtail panhandling; and that without a judgment enjoining the enforcement of these ordinances, a substantial likelihood exists that Plaintiff will be subjected to such enforcement.[78] Accordingly, Plaintiff adequately demonstrates standing to bring constitutional challenges against Laf. Ord. §§ 62-71, 62-32, 62-68 and La. R.S. 14:97.

B.    Mootness

Plaintiff filed the instant suit on November 12, 2021.[79] By adoption of CO-047-2022 on May 3, 2022, LCG repealed Laf. Ord. § 62-71, "Begging and Soliciting Money" and subsection (a)(7) of § 62-32, "Criminal Mischief[.]"[80] Although not argued by counsel, this Court takes judicial notice of the official action of LCG, undertaken after the filing of Plaintiff's suit.

"'[V]oluntary compliance' moots a case only when 'it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'"[81] This is particularly true when, as here, voluntary compliance is undertaken after the filing

---

[78]     FAC at ¶¶ 25, 28-31, 38, 41-46.
[79]     Rec. Doc. 1.
[80]     https://apps.lafayettela.gov/obcouncil/index.html
[81]     *Blitch v. City of Slidell*, 260 F.Supp.3d 656, 662 (E.D. La. 2017) quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

of a suit challenging the conduct at issue.[82]  In  addition to voluntarily repealing the aforementioned ordinances, Defendants agreed to refrain from enforcing either Laf. Ord. § 62-68 or La. R.S. § 14:97 (both pertaining to simple obstruction of a highway of commerce) during the pendency of this litigation.[83]   As noted by the Eastern District of Louisiana in *Blitch*, the necessity of such a stipulation affirms that the conduct at issue is likely to recur upon conclusion of this litigation.[84]   Moreover, there is no assertion or stipulation regarding future reenactment of former Laf. Ord. § 62-71.  Finally, there is no assertion or stipulation that panhandling will not be subject to criminal enforcement under the remaining portions of Laf. Ord. § 62-32, "Criminal Mischief."[85]

Considering the foregoing, this Court finds Plaintiff's constitutional challenges to La. R.S. 14:97 and Laf. Ord. §§ 62-32, 62-68 and 62-71 are not moot.

### C.    Ripeness

The ripeness requirement is a "central component" of Article III's cases and controversies limitation.[86]   Ripeness protects the courts and other branches of

---

[82]      *Supra*, citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,
[83]      Rec. Doc. 89.
[84]      *Blitch*, 260 F.Supp.3d at 662-63.
[85]      Former Subsection (a)(7) of Laf. Ord. § 62-32 read, "Criminal mischief is the intentional performance of any of the following acts…[a]cting in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others."  This Court notes that Subsection (a)(8), still in force, prohibits "[i]nterfering with any person in any place by jostling against such person or unnecessarily crowding him or by placing a hand in the proximity of such person's pocketbook or handbag."  It is not difficult for this Court to envision the use of this portion of Lafayette's Criminal Mischief ordinance to curtail panhandling.
[86]      *Blitch*, 260 F.Supp.3d at 662 citing *Nat'l. Park Hospitality Ass'n. v. Dep't. of the Interior*, 538 U.S. 803, 807-08 (2003).

government from premature adjudications resulting in abstract entanglements over policies and dissuades court " '…interference' in policy decisions until a policy 'has been formalized and its effects felt in a concrete way by the challenging parties.' ".[87] The court's primary considerations in evaluating ripeness are: "the fitness of the issue for judicial decision, and the  hardship to the parties of withholding court consideration.[88]

A case is fit for judicial decision when remaining issues are purely legal and the Court will not benefit from further factual development.  Here, only legal issues remain regarding the constitutionality of Defendants' enforcement of the provisions named above to curtail panhandling.  The Court is aware of no outstanding factual questions that may necessarily impede review of the legal issues.

Consideration of the hardship to the parties, should this Court decline to hear Plaintiff's claims, is similarly apparent.  Plaintiff alleges and Defendants do not refute that he panhandles to support himself.  Were this Court to decline to hear Plaintiff's claims, Plaintiff would be faced with two undesirable outcomes: to self-censor his intended protected speech or to engage in the intended protected speech and face criminal penalties under the operative law.  Forced modification of behavior, particularly that which would deprive Plaintiff of a constitutional right, is

---

[87]     *Id.* (internal citations omitted).
[88]     *Supra*, at 663 quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008).

a cognizable hardship.[89]   We note that the harm threatened to Plaintiff is not "subjective" in this case, as the facts alleged demonstrate further criminal enforcement of the cited provisions to curtail panhandling is "certainly impending."[90]

Based on these determinations, this Court finds Plaintiff's claims are ripe for judicial consideration.  Having found Plaintiff's claims to be justiciable under this Court's Article III jurisdiction, we now address additional preliminary considerations.

## VI.    Qualified immunity

Mayor Guillory, Logan, Chief Morgan and Officer Myers seek dismissal of all claims against them in this case based, in part, on the defense of qualified immunity.

> Qualified immunity shields a municipal official from individual liability unless the plaintiff can show: (1) the official violated a statutory or constitutional right, and (2) that the right violated was "clearly established" at the time of the challenged conduct.[91]

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that

---

[89]    *Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018) quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) ("[i]n the context of the First Amendment… 'government action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury.' ").

[90]    *Glass v. Paxton*, 900 F.3d 233, 239-40 (5th Cir. 2018) (finding that plaintiff's constitutional harm of self-censorship was subject to a chain of contingencies which prohibited a finding of "certainly imminent" harm).

[91]    *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

right.'"[92]   Although a plaintiff seeking to overcome a qualified immunity defense need not cite a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."[93]

Considering the Court's analysis regarding the status of the rights at issue in this case, it is the finding of this Court that the November 12, 2020 arrest and citation of Plaintiff for violation of Laf. Ord. § 62-71 and subsequent amendment to a charge under La. R.S. § 14:97 was a violation of his clearly established right to engage in panhandling as a form of protected speech under the First Amendment to the U.S. Constitution.  Accordingly, this Court also finds that Plaintiff's Amended Complaint fairly and sufficiently states a claim against Mayor Guillory, Logan, Chief Morgan and Officer Myers for individual liability under 42 U.S.C. § 1983 for violation of Plaintiff's First, Fourth and Fourteenth Amendment rights, as to which these defendants are not entitled to qualified immunity.

VII.   <u>Sufficiency of claims against Mayor Guillory</u>

Mayor Guillory's motion to dismiss also seeks dismissal of all individual capacity claims against him on the basis that Plaintiff's Amended Complaint fails to allege facts sufficient to state a claim against him.[94]

---

[92]    *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citations omitted).
[93]    *al-Kidd*, 563 U.S. at 741.
[94]    Rec. Doc. 55.

Plaintiff's claims for violation of his First, Fourth and Fourteenth Amendment rights are brought under 42 U.S.C. § 1983, which provides, *inter alia*, that no person acting under color of state law may violate the rights secured to citizens under the Constitution and laws of the United States.  In this way, § 1983 does not create substantive rights, but rather provides a mechanism for the enforcement of rights arising from the Constitution or other federal law.[95]  Where, as here, a claim is asserted against a municipal official in his individual capacity, plaintiff must "establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation."[96]  Further, a municipal official may not be found liable under § 1983 under the theory of *respondeat superior*.  Rather, plaintiff must show that such official "(1) affirmatively participated in the acts causing constitutional deprivation, or (2) implemented unconstitutional policies that causally result in the constitutional injury."[97]

Plaintiff's Amended Complaint alleges Mayor Guillory is liable for the various policies and procedures employed by law enforcement within Lafayette Parish to criminalize panhandling, despite evidence that Mayor Guillory was aware

---

[95]    *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 1993) citing *Kirchberg v. Feenstra*, 708 F.2d 991, 1000 (5th Cir. 1983).
[96]    *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).
[97]    *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) quoting *Gates v. Texas Dept. of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

that panhandling was protected First Amendment speech.[98]  Plaintiff claims Mayor Guillory is liable for violations of his federal constitutional rights under the First, Fourth and Fourteenth Amendments based on supervisory liability and, as such, must show that Mayor Guillory acted or failed to act with deliberate indifference to the resulting violation of Plaintiff's constitutional rights.[99]  Deliberate indifference is demonstrated with "'proof that a municipal actor disregarded a known or obvious consequence of his action.'"[100]

Plaintiff's Amended Complaint alleges Mayor Guillory, Logan and Chief Morgan were moving forces behind the advent of a coordinated effort to curtail panhandling in Lafayette, Louisiana.  As evidence of that effort, Plaintiff cites video of an August 18, 2020 city-parish council ("Council") meeting at which Logan, in his role as City-Parish Attorney, briefed the Council on an ordinance proposed by Mayor Guillory, which would have made it a misdemeanor offense to, among other things, sit or stand for any length of time within 36 inches of a roadway or certain types of medians.[101]  Plaintiff cites dialogue between council members, Logan, and Mayor Guillory during that meeting affirming that the goal of the proposed ordinance was to target panhandlers indirectly by avoiding use of the word "panhandling," since, according to Logan, "…if you say 'panhandlers,' it will be

---

[98]    FAC at ¶¶ 22, 25, 27-29.
[99]    *Porter*, 659 F.3d at 446.
[100]   *Porter*, 659 F.3d at 447 quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
[101]   No. JO-079-2020.

declared unconstitutional."[102]  Logan's explanation of the proposed ordinance is also noted in the minutes of meeting.[103]  As alleged by Plaintiff, the council deferred action on the ordinance "indefinitely."[104]

Plaintiff further alleges that, after failing to achieve approval for the proposed ordinance, Mayor Guillory and Logan undertook efforts to enact a policy of criminalizing panhandling by charging panhandlers with violations of other existing law, rather than Lafayette Code § 62-71, which he knew to be unconstitutional under prevailing Supreme Court precedent.[105]

Plaintiff asserts that LPD was directed by Mayor Guillory and Chief Morgan to "compile a list of names of people known to beg or solicit donations in Lafayette's public spaces for targeted enforcement of the existing ordinances."[106]  Plaintiff cites the affidavit of Sr. Cpl. D. Broussard, filed in a criminal proceeding against Mr. Anthony Willis ("Willis"), attesting that he was familiar with Willis, who was charged with criminal mischief under Lafayette Code § 62-32(7), a now-repealed portion of Lafayette's Criminal Mischief ordinance, "due to compiling a list of name of subjects panhandling (holding signs asking for help; money, food or anything

---

[102]    https://video.ibm.com/recorded/127626692 at 58:12.
[103]    Joint council meeting minutes of 08/18/2020 at https://apps.lafayettela.gov/obcouncil/index.html.  "It is meant to deal with congestion of people next to the street, people holding signs, panhandling and begging. He further noted that a similar ordinance has been held up as constitutional."
[104]    FAC at ¶ 23.
[105]    Rec. Doc. 29 at ¶ 25.
[106]    Id. at ¶ 28.

helpful.) for the last 4 months."[107]   Plaintiff further cites an internal memorandum by former LPD Chief Thomas Glover instructing officers to "enforce laws that restrict panhandling within the city limits of Lafayette." Glover's internal memorandum references a "Specialized Panhandling Detail" and threatens "progressive discipline" to officers who do not comply.[108]

These factual allegations, taken as true, adequately allege a cooperative effort among various government officials to institute targeted enforcement of certain laws to curtail panhandling by Plaintiff and other similarly situated citizens sufficient to survive a challenge under Fed. R. Civ. P. 12(b)(6).  Although Plaintiff does not allege Mayor Guillory was personally present at his November 12, 2020 arrest and citation, Plaintiff does allege Mayor Guillory was a moving force behind the cooperative effort by Defendants to deter protected speech.   Moreover, we find that, given the frank observations of Logan in the presence of the Mayor at the August 18, 2020 council meeting and the dearth of jurisprudence establishing panhandling as protected speech, a reasonable official would have and should have known that pretextual arrests of citizens engaged in this protected speech is violative of the First Amendment.

---

[107]     *Id.* at ¶ 32.
[108]     FAC at ¶ 38.

The allegations of the Amended Complaint fairly allege defendants were also aware of the importance of avoiding the "appearance" of making arrests of citizens engaged in panhandling, as demonstrated by the amendment of charges against Henagan and correspondence instructing law enforcement to cite panhandlers for something other than Laf. Ord. § 62-71.[109]

Based on the foregoing, this Court finds Plaintiff's Amended Complaint alleges conduct by Mayor Guillory rising to the level of deliberate indifference to Plaintiff's First Amendment right to engage in protected speech. Accordingly, Mayor Guillory is not entitled to dismissal of Plaintiff's § 1983 claims against him and this Court will recommend Mayor Guillory's motion to dismiss be denied accordingly.[110] The undersigned notes that this finding is made pursuant to Fed. R. Civ. P. 12(b)(6) and no finding is made as to Plaintiff's ultimate success on claims against Mayor Guillory.

In addition to the pending motion to dismiss, Mayor Guillory also filed a motion for imposition of sanctions under Fed. R. Civ. P. 11.[111] Given the Court's findings above, this Court will recommend Mayor Guillory's Rule 11 motion for sanctions also be denied.

---

[109] FAC at ¶¶ 34, 38, 40.
[110] Rec. Doc. 55.
[111] Rec. Doc. 22.

VIII.  <u>Sufficiency of claims against Chief Morgan and Officer Myers</u>

The motion to dismiss filed jointly on behalf of former interim Lafayette Chief of Police, Scott Morgan, and Lafayette Police Officer Joshua Myers alleges Plaintiff fails to state cognizable claims against them and seeks dismissal on this basis.[112] Chief Morgan and Officer Myers similarly assert qualified immunity as to all claims against them.[113] Chief Morgan[114] and Officer Myers are named in their individual capacities in Counts 1, 5 and 6 of Plaintiff's Amended Complaint.

Count 1 asserts a claim under 42 U.S.C. § 1983 for violation of Plaintiff's First, Fourth and Fourteenth Amendment rights stemming from his November 12, 2020 arrest and misdemeanor citation.[115]  Plaintiff alleges Chief Morgan, along with Mayor Guillory, Logan and LCG "created and implemented a policy to enforce [Laf. Ord. § 62-71] against people – like Mr. Henagan – who sought charitable donations in Lafayette's public spaces."[116]  Plaintiff further alleges that Chief Morgan's failure to supervise or train subordinate police officers amounted to deliberate indifference, which led to the violation of Plaintiff's constitutional rights.[117]  Plaintiff alleges

---

[112]    Rec. Doc. 58.
[113]    *Id.*
[114]    The Court notes Scott Morgan is no longer employed as the Chief of Lafayette Police Department and, in fact, is no longer employed as a law enforcement officer.  *See*, Rec. Doc. 75 at p. 10.
[115]    FAC at ¶¶ 52-59.
[116]    *Id.* at ¶ 56.
[117]    *Id.* at ¶ 57.

Chief Morgan and Officer Myers "knew or should have known that [Laf. Ord. § 62-71] was unconstitutional."[118]

The Court construes Count One as a claim under § 1983 alleging Chief Morgan was a moving force behind the policy of curtailing panhandling by selective enforcement of, *inter alia*, former Laf. Ord. § 62-71 and La. R.S. § 14:97. Count 1 also fairly alleges Chief Morgan's failure to train LPD officers under his command amounting to deliberate indifference to the violation of Plaintiff's clearly established constitutional right.[119] Having previously determined Plaintiff successfully alleges the infringement of a clearly established right and, further, has adequately pled facts alleging the existence of a policy within LPD of selectively enforcing certain laws for the purpose of deterring protected speech under the First Amendment, this Court finds Plaintiff's allegations against Chief Morgan in Count 1 to be sufficient to survive a Rule 12(b)(6) challenge.[120]

Chief Morgan served as Interim Police Chief from January 6, 2020 until December 31, 2020 and was, thus, Chief of Police when Plaintiff was arrested on November 12, 2020 and cited for violation of Laf. Ord. § 62-71.[121] Plaintiff asserts that Chief Morgan either personally participated in enacting a policy of criminalizing

---

[118]    *Id.* at ¶¶ 56, 58.
[119]    *Id.* at ¶ 57.
[120]    *Ybarra v. Davis*, 489 F.Supp.3d 624, 634 (5th Cir. 2020) ("The Fifth Circuit does not require a plaintiff to plead facts 'peculiarly within the knowledge of defendants.' " citing *Morgan v. Hubert*, 335 F.Appx. 466, 472 (5th Cir. 2009)).
[121]    *Id.* at p. 7.

panhandling or at least should have known that enforcement of Laf. Ord. § 62-71 was unconstitutional.  Although the Court agrees that Chief Morgan's tenure as Chief of Police was brief, the events giving rise to this suit occurred during that tenure and Plaintiff alleges Chief Morgan's participation in a cooperative effort to curtail panhandling.  Discovery on this issue may later bear out Chief Morgan's contention that he engaged in no such effort or that he trained and instructed LPD officers on the constitutional protections afforded to panhandling under the First Amendment.  At the pleadings stage, however, Plaintiff's claims are sufficiently pled under Fed. R. Civ. P. 8 to survive a Rule 12(b)(6) challenge.

This Court also finds that Plaintiff sufficiently alleges facts which, if true, would foreclose the application of qualified immunity as to Count One, since Plaintiff alleges the knowing implementation of a policy designed to deter Plaintiff and others like him from the exercise of clearly established First Amendment rights. The Court will recommend limited discovery be permitted regarding the defense of qualified immunity as to this claim against Chief Morgan.

Count Five asserts a retaliatory arrest claim against Chief Morgan and Officer Myers and, in the alternative, a claim for selective enforcement.[122]

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech…If an official takes adverse action against someone based on

---

[122]    FAC at ¶¶ 73-77.

that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim.[123]

Retaliatory arrest claims generally require that a plaintiff plead and prove the absence of probable cause as a means of establishing the "but for" causation necessary to show a defendant's improper motive was the cause of the plaintiff's constitutional injury.[124]   In *Nieves v. Bartlett*, the Supreme Court announced a "narrow exception" to the causation requirement for cases in which plaintiff alleges that, even if probable cause for the arrest existed, officers typically exercise their discretion not to make arrests of citizens engaged in similar conduct.  In this way, plaintiffs are able to address "but for" causation by pleading " 'objective evidence that [of arrest] when otherwise similarly situated individuals had not been.' "[125] Such claims are properly understood as "selective enforcement claims" under the Equal Protection Clause of the Fourteenth Amendment.

In *Villareal v. City of Laredo*,[126] Texas, the Fifth Circuit considered the selective enforcement claim of a journalist arrested for violation of an ordinance prohibiting journalists from seeking to access non-public information from a public servant.  Noting Villareal's failure to name any other journalist who had engaged in

---

[123]    *Nieves*, 139 S.Ct. at 1722 (internal citations omitted).
[124]    *Hartman v. Moore*, 547 U.S. 250, 259 (2006).
[125]    *Gonzalez v. Trevino*, _____ F.4th _____, 2022 WL 3009351 *3 (5th Cir. 2022) (quoting *Lozman v. City of Riviera Beach*, _____ U.S. _____, 138 S.Ct. 1945, 1953-54 (2018)).
[126]    _____ F.4th _____, 2022 WL 33334699 (5th Cir. 2022).

prohibited conduct, the appellate court deemed that plaintiff's allegations sufficient under the permissive Rule 12(b)(6) standard, which requires that "the complaint…be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff."[127]

Count Five of Plaintiff's Amended Complaint alleges

> Defendant Myers and other LPD Officers did not have a warrant or reason to suspect Mr. Henagan was committing a crime…[T]heir acts were in retaliation for Mr. Henagan's protected speech.  In the alternative, Defendant Myers and LPD officers may have had probable cause to seize, search, and cite Mr. Henagan, but they did not seize, search, or cite people who were otherwise similarly situated and did not ask the public for donations.[128]

As explained above, Plaintiff's November 12, 2020 arrest and citation culminated in dismissal of the charge, as amended.  Plaintiff's Amended Complaint also specifically alleges he was located "near the intersection of West Congress Street and West University Avenue [where he] had been asking for donations from the sidewalk."[129]  Plaintiff pleads the absence of probable cause for his arrest or, if defendants did possess probable cause, Plaintiff's arrest constituted selective enforcement of the laws as charged and amended.[130]  Considering the facts as alleged and construing such facts in Plaintiff's favor under the applicable standard, this

---

[127] *Id.* at *9 (quoting *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)).
[128] FAC at ¶¶ 75-76
[129] FAC at ¶ 48.
[130] FAC at ¶ 76.

Court deems Plaintiff's allegations sufficient consistent with *Nieves* and *Villareal* to withstand defendants' Rule 12(b)(6) challenge.[131]

Having already determined that Plaintiff alleges the violation of a "clearly established right" in this case, the Court rejects arguments by Chief Morgan and Officer Myers regarding the defense of qualified immunity.  As police officers, Chief Morgan and Officer Myers may be presumed to know the law they are charged with enforcing.[132]  Given this Court's findings as to the status of former Laf. Ord. § 62-71 above, Chief Morgan and Officer Myers did have "fair notice" of Plaintiff's constitutional right to engage in panhandling. The Court will recommend limited discovery as to application of the defense of qualified immunity as to this claim against Chief Morgan and Officer Myers.

Count Six asserts claims against, *inter alia*, Chief Morgan and Officer Myers for infringement of his rights under Louisiana Constitution Art. I, Section 7.[133] Protection of free speech under Louisiana's Constitution mirrors that afforded by the U.S. Constitution.   Similarly, Louisiana courts apply the defense of qualified immunity for violations of free speech rights in the same manner as this defense is interpreted through federal jurisprudence.  As a result, separate analysis of Count

---

[131]    As explained by the Fifth Circuit in the recent ruling in *Villareal v. City of Laredo*, the presence of probable cause for an arrest does not negate a selective enforcement claim. ____ F.4th ____, 2022 WL 3334699 at *9 (internal citations omitted).

[132]    *Anderson v. Larpenter*, 2017 WL 3064805, *12 (E.D. La. 2017) quoting *Rykers v. Alford*, 832 F.2d 895, 898 (5th Cir. 1987) (finding the defense of qualified immunity unavailable where defendant sheriff directed an investigation into activity that was clearly protected speech under the First Amendment).

[133]    *Id.* at ¶¶ 78-80.

Six, which this Court views as the Louisiana law counterpart to Plaintiff's Count One, is unnecessary. This Court will recommend denial of defendants' motion to dismiss as to Count Six and will further recommend limited discovery regarding the application of defendants' claimed qualified immunity defense thereto.[134]

IX.    Sufficiency of claims against Logan

Lafayette City-Parish Attorney Greg Logan's motion to dismiss cites several bases for dismissal of Plaintiff's federal and Louisiana law individual capacity claims against him in this suit.[135]  First, Logan asserts that Plaintiff's Amended Complaint fails to adequately allege facts tending to show that Logan acted with deliberate indifference to the violation of Plaintiff's First Amendment rights which were a "known or obvious consequence of his action."[136]  Similarly, Logan argues that Plaintiff's claims against him under § 1983 fail because the Amended Complaint fails to allege acts by Logan were causally connected to the deprivation of a constitutional right.[137]  Finally, Logan argues for dismissal of all claims based on the defenses of absolute prosecutorial and legislative immunity, as well as qualified immunity.[138]

---

[134]    *Clarkston v. White*, 943 F.3d 988, 992 n. 4 (5th Cir. 2019); *Heaney v. Roberts*, 846 F.3d 795, 802 n. 2 (5th Cir. 2017).
[135]    Rec. Doc. 57.
[136]    Rec. Doc. 57-1 at p. 12, quoting *Porter v. Epps*, 659 F.3d 400, 446 (5th Cir. 2011).
[137]    Rec. Doc. 57-1 at p. 13.
[138]    Rec. Doc. 57-1 at pp. 15-21.

Logan asserts prosecutorial immunity as to all individual capacity claims against him by Plaintiff.[139]  Prosecutorial immunity operates as an absolute shield from suit for all activities "'intimately associated with the judicial phase of the criminal process,' including 'initiating a prosecution [ ] and presenting the State's case.'"[140]  "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."[141]  Rather, only those functions which are deemed "preparation for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State" are protected by absolute immunity.  Functions deemed "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings" are entitled only to qualified immunity, such as would apply to a law enforcement officer.[142]

The foundations of absolute prosecutorial immunity are derived from the immunity afforded judges and grand jurors.  In *Imbler v. Pachtman*, the U.S. Supreme Court reasoned,

> "[t]o be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a

---

[139]     Rec. Doc. 40 at pp. 4-9.

[140]     *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).

[141]     *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016) quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[142]     *Singleton v. Cannizaro*, 956 F.3d 773, 779-80 (5th Cir. 2020) quoting *Buckley*, 509 U.S. at 273.

prosecutor's immunity would disserve the broader public interest."

Similarly legislative immunity acts as an absolute shield from suit for federal, state, regional and local legislators.[143] "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"[144] An act's legislative character is derived not from the motive or intent of the official performing it, but rather, from the nature of the act itself.[145]

Here, Logan is alleged to have advocated for the enactment of an ordinance for the purpose of curtailing protected speech and, thereafter, to have consulted, advised and encouraged the development of an unlawful policy of pretextual arrests for the same purpose. Logan asserts any such acts undertaken by him fall within the bounds of legislative activity and, therefore, absolute immunity applies to Plaintiff's claims.[146] Plaintiff responds by denying Logan's legislative acts form the basis of any claim against him in this suit.[147] Specifically, Plaintiff argues, "[p]laintiff has not alleged that…Logan's testimony before the LCG Council was itself a constitutional violation or that…Logan is liable to Plaintiff because he advised the LCG Council in his capacity as a legislator."[148] To the extent that Plaintiff's

---

[143]  *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1988) citing *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951), *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979), *Kilbourn v. Thompson*, 103 U.S. 168, 202-04 (1880) and
[144]  *Bogan*, 523 U.S. at 54 citing *Tenney*, 341 U.S. at 376.
[145]  *Id.*
[146]  Rec. Doc. 57-1 at pp. 16-17.
[147]  Rec. Doc. 70 at pp. 14-15.
[148]  *Id.* at p. 15.

Amended Complaint alleges Logan's rendering of legal guidance to the council or others regarding the legality of the proposed ordinance and policy of enforcement of any existing law, Logan is entitled to absolute legislative immunity on all such claims under both federal and Louisiana law.[149]  Logan's recorded comments and those alleged to have been offered to others in pursuit of a general policy of enforcement constitute legislative acts, rather than administrative ones regarding "the investigative stage of a criminal case" as alleged by Plaintiff.[150]  Plaintiff's Amended Complaint does not fairly allege Logan was actually involved in the charging decision regarding his own criminal case, but the Court notes that, to the extent such claims are intended or contemplated by Plaintiff, Logan would enjoy absolute prosecutorial immunity therefrom, as charging decisions clearly fall within the ambit of that immunity under applicable jurisprudence.[151]

---

[149]     *Hughes v. Tarrant Cty., Texas*, 948 F.2d 918, 920-21 (5th Cir. 1991) (internal citation omitted) (when an action involves "establishment of a general policy" it is legislative in nature, as opposed to actions that single out a specific individual, which are administrative); *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 134 (5th Cir. 1986) (legislative acts are those which "involve the degree of discretion and public-policymaking traditionally associated with legislative functions").

[150]     Rec. Doc. 70 at pp. 10-11.

[151]     *Kalina v. Fletcher*, 522 U.S. 118 (1997) ('acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate…' are entitled to absolute prosecutorial immunity from suit) quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Wooten v. Roach*, 964 F.3d 395, 407 (5th Cir. 2020) (explaining that absolute prosecutorial immunity applies only to "conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'") quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Knapper v. Connick*, 681 F.2d 944 (La. 1996) (prosecutorial immunity for Louisiana law claims mirrors that afforded under federal law).

Accordingly, this Court will recommend the motion to dismiss filed by defendant Logan[152] be granted based on the defenses of absolute legislative and prosecutorial immunity.

X.      Sufficiency of claims against LCG

LCG's motion asserts Plaintiff's Amended Complaint fails to adequately plead the required elements for municipal liability for Plaintiff's § 1983 claims.[153] This Court disagrees.

Pursuant to the U.S. Supreme Court's seminal ruling in *Monell v. Department of Social Services*,[154] a municipality is a "person" within the meaning of 42 U.S.C. § 1983.  The *Monell* Court identified three elements required for a finding of municipal liability under § 1983: (1) an official policy; (2) promulgated by the municipal policymaker; and (3) that the official policy was the moving force behind the violation of a constitutional right.[155]  A municipality may not be liable under § 1983 based solely on its employment of a tortfeasor or, stated differently, on the basis of respondeat superior.[156]  An "official policy" may be shown by citing a formal policy statement or by proof of a "persistent widespread practice of city officials, which, although not authorized by officially adopted and promulgated

---

[152]      Rec. Doc. 57.
[153]      Rec. Doc. 54.
[154]      436 U.S. 658, 688-89 (1978).
[155]      *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018); *Supra*, at _____; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).
[156]      *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (internal citations omitted).

policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[157]

Plaintiff's Amended Complaint sufficiently states a *Monell* claim under § 1983 for violation of Plaintiff's First, Fourth and Fourteenth Amendment rights. Plaintiff alleges and cites evidence of "an official policy" in the form of: (1) an affidavit filed by LPD Sr. Cpl. D. Broussard in conjunction with the case of Anthony Willis, a homeless man arrested and cited for panhandling on or about March 29, 2021 that references the "compiling [of] a list of name[s] of subjects panhandling (holding signs asking for help; money, food or anything helpful…for the past 4 months);[158]   (2) email correspondence dated April 20, 2021 from an LCG legal department employee Malcolm Bussey ("Bussey") to LPD Major Blair Dore ("Major Dore"), in which Bussey instructs, at the advice of Gary Haynes (another LCG employee), to refrain from citing citizens with violations of former Laf. Ord. § 62-71 and, instead, to cite them with Laf. Ord. § 62-68 "if the suspect is witnessed (by a Police officer) walking in the roadway to accept money…";[159] (3) July 27, 2021 correspondence from then-Chief of Lafayette Police Thomas Glover ("Chief Glover") who advised that police officers, regardless of rank, shall "enforce laws that restrict panhandling with the city limits of Lafayette" and references a

---

[157]   *Piotrowski*, 237 F.3d at 579 quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).
[158]   FAC at ¶ 32.
[159]   *Id.* at ¶ 34.

"Specialized Panhandling Detail" and threatens "progressive discipline" for violations of Chief Glover's directive; and (4) email correspondence dated December 17, 2021 from LPD Cpt. Brad Ridge reinforcing LPD's panhandler tracking practices and echoing the instructions of Chief Glover's directive that all LPD officers must work to curtail panhandling, but must cite all such individuals with violation of former Laf. Ord. § 62-32(7) ("Criminal Mischief") or Laf. Ord. § 62-68 ("Simple Obstruction of a Highway").[160]   Considering these allegations, viewed together with the comments of defendant Logan made at the August 18, 2020 council meeting regarding efforts to curtail panhandling,[161] Plaintiff's Amended Complaint provides more than ample support for the existence of an official policy for *Monell* purposes.

Similarly, Plaintiff sufficiently alleges official policymakers as the origin of LCG's efforts to curtail panhandling.  Plaintiff's Amended Complaint alleges institution of anti-panhandling efforts by Mayor Guillory, City-Parish Attorney Logan, and Chiefs Morgan and Glover,[162] all of whom are "official policymakers" as required for *Monell* purposes.[163]   Moreover, Plaintiff alleges official

---

[160]     This Court assumes for purposes of this Rule 12(b)(6) analysis that the "Specialized Panhandling Detail" is the same panhandling tracking and curtailment effort referenced by Sr. Cpl. D. Broussard's affidavit cited above.
[161]     FAC at ¶ 23.
[162]     The Court notes that Chief Glover is not a named defendant in this case, but Plaintiff's specific allegations as to Chief Glover's actions are considered within the context of the elements of Plaintiff's *Monell* claim against Chief Glover's employer, LCG.
[163]     Mayor Guillory, Logan, and Chiefs Morgan and Glover are all fairly considered "official policymakers" for *Monell* purposes, since they are "officials whose acts or edicts may fairly be said to represent official policy."  *Monell*, 436 U.S. at 694.

policymakers, including Mayor Guillory and Chiefs Morgan and Glover were aware of the policies regarding enforcement of Lafayette's anti-panhandling law.[164]  This Court finds, therefore, that Plaintiff's Amended Complaint adequately names official policymakers as required to sustain his *Monell* claim.

Lastly, Plaintiff clearly alleges, in the form of correspondence and comments referenced above, LCG's policy and widespread practice of criminalizing panhandling resulted in his November 12, 2020 arrest and citation, as well as subsequent chilling of his right to panhandle as protected speech under the First Amendment.  Thus, Plaintiff's Amended Complaint satisfies the requirements of *Monell* as to Plaintiff's § 1983 claim against LCG.  Accordingly, this Court will recommend LCG's motion to dismiss be denied in all respects.

XI.   Remaining claims

In addition to the claims addressed above, Plaintiff's Amended Complaint also seeks declaratory and injunctive relief as to Laf. Ord. § 62-68 ("Simple Obstruction of a Highway of Commerce").[165]  Plaintiff does not allege he was cited with violation of this ordinance, but rather, bases his claim on the likelihood that, absent the Court's intervention, this ordinance will be used to chill his protected speech in the future.[166]  For the reasons expressed above, this Court will recommend

---

[164]   Rec. Doc. 26, 27.
[165]   FAC at ¶¶ 63 – 67.
[166]   *Id.* at ¶¶ 66-67.

defendants' motions to dismiss as to Count Three of Plaintiff's Amended Complaint be denied at this time.

Defendants assert Plaintiff's claims against them are improper, arguing they are not the proper parties to address the constitutionality of the statutes at issue.[167] Following Plaintiff's notice in the record, this Court certified Plaintiff's facial and as-applied constitutional challenges to La. R.S. 14:97 in this case.[168]   An amicus curiae brief was filed on behalf of Attorney General Landry addressing the facial challenge to that statute.[169]   This Court is, accordingly, satisfied that proper procedure as to Plaintiff's challenges to La. R.S. § 14:97 was employed under Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403(b).

Regarding challenges to Lafayette municipal ordinances, Plaintiff's suit seeks declaratory and injunctive relief preventing future enforcement of such laws against him.   Review of Plaintiff's Amended Complaint reveals many grouped counts, which may create confusion as to the claims stated against each particular defendant. This Court will recommend Plaintiff be ordered to amend to properly delineate the relief sought as to each named defendant.

## **Conclusion**

For the reasons discussed herein, the Court recommends:

---

[167]    Rec. Doc. 58-1 at pp. 8-9.
[168]    Rec. Doc. 78.
[169]    Rec. Doc. 81-3.  The Court notes that Attorney General Landry has not intervened in this suit as of the date of this Report and Recommendation.

1. the motion to dismiss (Rec. Doc. 55) filed by Mayor Guillory be DENIED;

2. the motion for Rule 11 sanctions (Rec. Doc. 22) filed by Mayor Guillory be DENIED;

3. limited discovery on the issue of qualified immunity as asserted by Mayor Guillory be permitted subject to such conditions as the district court may deem appropriate;

4. the motion to dismiss filed by defendants Chief Morgan and Officer Myers (Rec. Doc. 58) be DENIED;

5. limited discovery on the issue of qualified immunity as asserted by Chief Morgan and Officer Myers be permitted subject to such conditions as the district court may deem appropriate;

6. the motion to dismiss filed by defendant Logan (Rec. Doc. 57) be GRANTED, dismissing all claims by Plaintiff against such defendant, based on application of the defenses of legislative and prosecutorial immunity;

7. the motion to dismiss by LCG be DENIED; and

8. plaintiff be ordered to amend his complaint to further specify the relief sought as to each remaining named defendant.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 16th day of August, 2022.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE